457 So.2d 690 (1984)
STATE of Louisiana
v.
Daniel SINGER.
No. K-2830.
Court of Appeal of Louisiana, Fourth Circuit.
September 21, 1984.
Robert E. Jones, III, Asst. City Atty., New Orleans, for relator.
Steven Lemoine, New Orleans, for respondent.
Before KLEES, SCHOTT and LOBRANO, JJ.

ON PETITION FOR SUPERVISORY WRITS
On March 23, 1984, the defendant Daniel Singer was arrested for D.W.I. He was advised of his rights as per a standard form adopted and distributed by the Louisiana Department of Public Safety. Singer submitted to a photo-electric intoximeter test, which registered a blood alcohol reading in excess of .10 percent. On April 3rd, Singer was arraigned and pled not guilty. A motion to suppress the results of the intoximeter test was filed and on August 1st, the motion was granted. The State's application for supervisory writs to the criminal district court was denied on September 4th. The State now comes before this court with a petition for supervisory writs attacking the traffic court's suppression of these test results.
R.S. 32:661 provides in part that when an officer requests that a driver submit to a blood alcohol test, he must "first inform the person of the consequences of a refusal and the consequences if the test is conducted and the results indicate a blood alcohol concentration of .10 percent or above by weight of blood," and the officer must have the driver sign a form advising him of such rights. Subsection C(2) provides that where there is noncompliance with such procedure, the results are inadmissible in any criminal action.
The rights form from which Singer was advised and which he signed prior to submitting to the blood alcohol test advised in part: "If you submit to the test, and the test results show a blood alcohol level of .10 percent or above, your driver's license shall be suspended for a minimum period of three (3) months." No other warnings were given as to the consequences *691 of submitting to the test and having a .10 per cent or above blood alcohol content. At the suppression hearing, the judge noted that he was suppressing the test results because the standard form used to advise Singer of these consequences failed to advise him that a reading of .10 per cent or above could be used as conclusive evidence of a D.W.I. offense in violation of R.S. 14:98.
In its brief, the State argues that the use of this test in a D.W.I. prosecution is not a natural consequence of a .10 per cent or above blood alcohol finding. It argues that a conviction for D.W.I. does not automatically result from such finding because the State still has to prove that the traffic stop was valid and that the chemical test was validly administered. The State contends that R.S. 32:661C mandates advising the suspect of only the automatic consequences of a .10 per cent or higher reading: the ninety-day suspension of driving privileges under R.S. 32:667.
However, a reading of Section 667 reveals that the clear intent for mandating the administration of such test is for the use of its result in a D.W.I. proceeding. Subsection A speaks of administering such test for arrests under R.S. 14:98. In addition R.S. 14:98, amended by Acts 1983, No. 634, effective January 1, 1984, now provides that D.W.I. occurs where: "(2) The operator's blood alcohol concentration is 0.10 percent or more by weight based on grams of alcohol per one hundred cubic centimeters of blood." Thus, it appears that prosecution for D.W.I. is a natural consequence of a blood alcohol reading of .10 per cent or above, a consequence of which this defendant was not advised.
The State argues that the 0.10 reading is merely a rebuttable presumption. See State v. Williams, 354 So.2d 152 (La. 1977). However, with the 1983 amendment of R.S. 14:98, the 0.10 percent or above reading constitutes a violation of R.S. 14:98, not just a rebuttable presumption.
Accordingly, for the reasons expressed above, we find no error in the ruling of the trial court and the applications for writs is denied.