460 So.2d 1184 (1984)
STATE of Louisiana, Appellee,
v.
Roswell C. DOWNER, Appellant.
No. 16788-KW.
Court of Appeal of Louisiana, Second Circuit.
December 5, 1984.
*1185 William J. Guste, Jr., Atty. Gen., New Orleans, Henry N. Brown, Jr., Dist. Atty., Bobby L. Stromile, Asst. Dist. Atty., Benton, for appellee.
Arceneaux & Bookter by M. Thomas Arceneaux, Shreveport, for appellant.
Before MARVIN, FRED W. JONES, Jr., and NORRIS, JJ.
NORRIS, Judge.
Applicant, Roswell C. Downer, was charged with first-offense DWI, a violation of LSA-R.S. 14:98. The alleged offense took place on June 16, 1984. Before trial, applicant moved to suppress the results of a photoelectric intoximeter (PEI) test. When the district judge denied this motion, applicant changed his plea to guilty, reserving his right of appellate review under State v. Crosby, 338 So.2d 584 (La.1976). We granted writs to review applicant's two assignments of error. Finding his second assignment to have merit, we grant his motion to suppress, vacate the guilty plea, reverse his conviction and remand the case.

FACTS
On the date of his arrest, Downer was driving on Hwy. 80 in Bossier Parish at about 10:30 p.m. Hwy. 80 is a four-lane thoroughfare with two traffic lanes each way and a median. State Trooper Archie Griffin spotted Downer's car and noticed some erratic movement on its part. Proceeding in the left lane, it had drifted across the center line and then suddenly jerked back into the left lane. Moments later, the vehicle repeated this motion. Alerted by this conduct, Griffin turned on his patrol car's brights and flashers in an attempt to pull Downer over. When this method failed, Griffin turned on his siren, which seemed to attract Downer's attention. Downer made a "wide" left turn onto Country Place Blvd., drove two blocks, and finally stopped. When Downer got out of his car, Griffin noticed a look of unsteadiness in his movement and a smell of alcohol on his breath. Griffin administered two field sobriety tests and Downer failed both. *1186 Griffin then placed him under arrest and advised him of his constitutional rights.
At the station, Griffin prepared Downer to take the PEI test. He showed him a standard form, DPSOS 4615, and "read the form completely from the beginning to the end" to applicant. Downer said he understood it and signed it. Griffin's oral warnings were confined to repeating those on the printed form; no others were given. R.p. 13-14. The form contained the following warnings: "Evidence of your refusal to submit to this chemical test or test results of .10 percent or above will be used against you in court ... If you submit to the test, and the test results show a blood alcohol level of .10 percent or above, your driver's license shall be suspended for a minimum period of three (3) months."[1]
Downer claims, and Griffin admits on cross-examination, that no one ever told him that a reading of .10 percent or above would create a presumption of intoxication under the DWI statute. Downer signed the form, took the test, and made a score of .103 percent. The district judge denied his motion to suppress the test results.

ASSIGNMENT OF ERROR NO. 1
In this assignment of error, applicant contends that Officer Griffin did not have probable cause to make the warrantless stop that led to his arrest. Probable cause exists when the facts and circumstances, known to the arresting officer and based on reasonable and trustworthy information, are sufficient to justify a person of average caution in the belief that the suspect has committed or is committing a crime. State v. Elliot, 407 So.2d 659 (La. 1981); State v. Hathaway, 411 So.2d 1074 (La.1982), and numerous other authorities. Probable cause for arrest is satisfied by a lesser standard than that required for conviction. State v. Winfrey, 359 So.2d 73 (La.1978); State v. Foster, 437 So.2d 309 (La.App. 2d Cir.1983). The state must nevertheless prove admissibility of any evidence seized without a warrant. LSA-C. Cr.P. Art. 703 D.
Applicant argues that the conduct for which he was stopped was not sufficient to support a finding of probable cause. He relies only on the general provisions of the fourth and fourteenth amendments, U.S.C.A.Const. Amds. 4, 14, and one recent third-circuit case, State v. Vaughn, 448 So.2d 915 (La.App. 3d Cir.1984). In Vaughn, the court's per curiam opinion summarized defendant's conduct thus:
It is the opinion of this Court that the defendant's actions crossing six inches over the center line and traveling thus for approximately ten feet, even when coupled with the observation of a vehicle swaying within its own lane, does [sic] not per se present sufficient facts to establish the requisite reasonable cause which is necessary before a police officer may legally stop a motorist; particularly so, when the police officer followed the defendant for only one and one-half blocks, and further, when derfendant's driving presented no evidence of danger to himself or to others. 448 So.2d at 916.
We do not agree that applicant's conduct was as minor as "crossing six inches over the center line ... for approximately ten feet." Officer Griffin testified crossed the line not once, but twice. R.p. 7. He observed this between Louisiana Downs and Bellevue Road and, although the exact distance is not shown in the record, Griffin said applicant was "very inattentive" and drove two blocks down a side street before stopping. In the process, applicant made a "wide left turn."
We find that all these facts, taken together with the circumstances of a late Saturday night by a racetrack, fully support a finding of probable cause. See State v. Strange, 334 So.2d 182 (La.1976); State v. Cichirillo, 440 So.2d 934 (La.App. 2d Cir.1983). This assignment lacks merit.

*1187 ASSIGNMENT OF ERROR NO. 2
In his second assignment of error, applicant claims Griffin failed to follow the procedure prescribed in LSA-R.S. 32:661, the "implied consent" statute, for the administration of blood alcohol tests and that this failure rendered the test results inadmissible. Subsection 661 C(1) provides:
When a law enforcement officer requests that a person submit to a chemical test as provided for above, he shall first inform the person of the consequences of a refusal and the consequences if the test if conducted and the results indicate a blood alcohol concentration of .10 percent or above by weight of blood. In addition, the law enforcement officer shall have the person sign a separate form advising such person of the consequences of his refusal to submit to a chemical test. However, a single combination of the two forms may be used. If the person is unable or unwilling to sign the form, the law enforcement officer shall certify that such person was informed of his constitutional rights and was unable or unwilling to sign said form. (Emphasized portion was added by LSA-Acts 1983, No. 632, § 1.)
Subsection 661 C(2) further provides that if the prescribed procedure is not complied with, the results of the test will be inadmissible.
The DWI statute, LSA-R.S. 14:98, as amended by LSA-Acts 1983, No. 634, § 1, provides in pertinent part:
The crime of operating a vehicle while intoxicated is the operating of any motor vehicle ... when:
(1) The operator is under the influence of alcoholic beverages; or
(2) The operator's blood alcohol concentration is 0.10 percent or more by weight based on grams of alcohol per one hundred cubic centimeters of blood; ...
The logic of applicant's argument is clear. The legislature in R.S. 32:661 C(1) has mandated that the officer inform the accused of the consequences if the test is conducted and the results show a blood alcohol concentration of .10 percent or above by weight of blood. R.S. 14:98 A(2) establishes an irrebuttable presumption of intoxication if the blood alcohol level is .10 percent or more. Thus, if an accused submits to a chemical test which is properly administered in accordance with law, and if the test results show a blood alcohol content of .10 percent or more, then the test results are admissible in evidence at a criminal trial and will conclusively prove the element of intoxication. This irrebuttable presumption of intoxication, therefore, is the most significant consequence of which an accused must be informed. Officer Griffin, by his own admission, did not orally inform applicant of this consequence; nor did the standard form describe this consequence. The clear language of the legislature, therefore, makes the results of the chemical test, or any reference to the chemical test, inadmissible against the applicant in this criminal action. R.S. 32:661C(2).
We note that the standard form or forms referred to in R.S. 32:661 C(1) do not have to inform a person of the consequences of submission to the chemical test where the results show a blood alcohol concentration of .10 percent or above. The form or forms need only advise a person of his constitutional rights and of the consequences of refusal to submit to a chemical test. An oral warning of the consequences of submission would have been adequate in the instant case.
Our conclusion is fortified by the following legal circumstances. The implied consent statute was amended in 1983. Until then, it had required the arresting officer to advise the accused only of the consequences of refusal to take the test. The amendment, effective January 1, 1984, specifically adds the requirement of a warning about the consequences of submission to the test which results in a finding of blood alcohol concentration of .10 percent or greater. The clarity of this new requirement shows a clear legislative intent to impose a stricter duty on law enforcement *1188 officers than existed before. This stricter duty is in accord with, and obviously prompted by, the correlative amendment to R.S. 14:98, also effective January 1, 1984, which makes blood alcohol concentration of .10 percent a conclusive presumption of intoxication.[2]
The amendment to R.S. 32:661 C(1) legislatively overrules the recent decision of State v. Spence, 418 So.2d 583 (La.1982). In Spence, the defendant attempted to argue that he was entitled to a warning about the consequences of submission, under the statute before the 1983 amendments. The supreme court said that such a warning was neither required by the statute nor compelled by the constitution. The legislature has since added that very provision to the statute, with plain clarity of purpose, and Spence can no longer be considered to control.
Finally, applicant correctly points out that this state's jurisprudence requires strict, painstaking compliance with the rules pertaining to blood-alcohol testing devices. See, for example, State v. Graham, 360 So.2d 853 (La. 1978), State v. Jones, 316 So.2d 100 (La.1975), and numerous other cases. While these cases appertain to equipment maintenance and are therefore not entirely apposite, they are expressive of the general rule that criminal statutes must be strictly construed in favor of the defendant. LSA-R.S. 14:3; State v. Young, 357 So.2d 503 (La.1978).
We are sensitive to other authorities that might support affirmance. The case of State v. Clark, 446 So.2d 293 (La.1984), not cited in the state's memorandum, held that "substantial compliance" with R.S. 32:661 will support a conviction. Other cases have reached a similar result, such as State v. Sims, 426 So.2d 148 (La.1983); Dabney v. Dept. of Public Safety, 298 So.2d 295 (La.App. 1st Cir.1974), writ denied 302 So.2d 25 (La.1974); Kolb v. State Dept. of Public Safety, 299 So.2d 877 (La. App. 4th Cir.1974). We do not agree that there was "substantial compliance" with R.S. 32:661 in the present case. The omitted warning is not only legislatively mandated but describes a very substantial consequence. It could induce a reasonable person to give up his license for six months, in hopes of acquittal, rather than give up his presumption of innocence, for the certainty of conviction.
For the reasons expressed, we reverse the lower court's ruling and grant the motion to suppress. The chemical test is inadmissible. We accordingly vacate applicant's guilty plea and reverse his conviction. Since, however, there is other evidence from which the state may attempt to prove its case, we remand this matter for further proceedings consistent with this decision.
MOTION TO SUPPRESS GRANTED; GUILTY PLEA VACATED; CONVICTION REVERSED, CASE REMANDED.
NOTES
[1] LSA-R.S. 32:667 B(1), as amended by LSA-Acts 1983, No. 632, § 1. If the accused refuses the test, he faces a suspension of six months. LSA-R.S. 32:667 B(2).
[2] Our brethren on the Fourth Circuit have reached the same conclusion in the recent case of State v. Singer, 457 So.2d 690 (La.App.4th Cir.1984).