LANIER, Judge,
dissenting.
The majority opinion is wrong factually and wrong legally.
ERRORS OF FACT
The majority opinion declares as fact that Officer Hebert “said nothing about the consequences of taking the test and registering a .10 percent level or higher.”
At pages 86 to 88 of the transcript, Trooper Barry Hebert specifically testified that prior to administering the photoelectric intoximeter (PEI) test, he read to McGuire a standard rights form relating to the chemical test for intoxication. At page 69 of the transcript, this testimony is corroborated by the testimony of Trooper Charles Hebert. The actual rights form signed by McGuire and the two troopers is filed in evidence as exhibit S-4 and is found at page 7 of the transcript. This is the form required by La.R.S. 32:661(C) and it provides, in pertinent part, as follows:
You are under arrest by a law enforcement officer who has reasonable grounds to believe that you were operating a vehicle while intoxicated. The law (R.S. 32:661-669) now will require you to take a chemical test to determine the alcoholic content of your blood.
A. These are the CONSEQUENCES AND EFFECTS OF SUBMISSION OR REFUSAL TO SUBMIT TO THE CHEMICAL TEST.
1. Refusal to submit to this chemical test shall result in the suspension of your driver’s license for a minimum period of six (6) months.
*742 2. Refusal to submit to this chemical test may also result in the loss of your vehicle registration and license plates.
3. Evidence of your refusal to submit to this chemical test or test results of .10 per cent or above will be used against you in court.
NOTE: If a traffic fatality has occurred or a person has been seriously injured you may not refuse the chemical test, if you have refused or are unable to participate in a field sobriety test.
B. You have the OPTION OF AN ADDITIONAL TEST.
You will be allowed to call a physician or other qualified person of your choice to give you an additional test, at your expense, if you so desire.
C. If you submit to the test, and the test results show a blood alcohol level of .10 percent or above, your driver’s license shall be suspended for a minimum period of three (3) months.
D. These are your CONSTITUTIONAL RIGHTS:
1. You have the right to remain silent; anything you say may be used against you in court.
2. You have the right not to incriminate yourself, and you have the right to stop answering any questions, at any time you desire.
3. You have the right to the assistance of counsel and the right to consult an attorney before answering any questions.
4. You have the right to have an attorney present during any questioning or the giving of any statement.
5. If you cannot afford an attorney, the court will appoint an attorney to represent you.
NOTE: IF YOU REFUSE THE TEST UNTIL YOU CAN TALK TO A LAWYER, YOU WILL STILL LOSE YOUR LICENSE.
[Underscoring added].
The record clearly shows McGuire was advised that (1) she was arrested for the offense of operating a vehicle while intoxicated (DWI), and (2) the consequences and effects of submitting to the test were (a) evidence of test results of .10 percent or above would be used against her in court and (b) if test results showed a blood alcohol level of .10 percent or above, her driver’s license would be suspended for a minimum of 3 months.
The factual statement to the contrary made by the majority is clearly wrong.
IRREBUTTABLE PRESUMPTION
The majority states La.R.S. 32:661(C) must be read in pari materia with La.R.S. 14:98(A)(2) and holds that La.R.S. 14:98(A)(2) establishes “a conclusive presumption of intoxication if the test result is .10 percent or more”. Reasoning from this basic premise and quoting favorably from State v. Downer, 460 So.2d 1184 (La. App. 2nd Cir.1984), the majority holds “[t]his irrebuttable presumption of intoxication, therefore, is the most significant consequence of which an accused must be informed.” The majority found that McGuire was not advised of this irrebutta-ble presumption and holds that this failure is a violation of La.R.S. 32:661(C) and requires suppression of the PEI test results.
Prior to Act 634 of 1983, which amended La.R.S. 14:98(A), effective January 1, 1984, the substantive crime of DWI was defined as “the operating of any motor vehicle, aircraft, vessel or other means of conveyance while under the influence of alcoholic beverages, narcotic drugs, central nervous system stimulants, hallucinogenic drugs or barbiturates.” Act 634 of 1983 amended La.R.S. 14:98(A) to define DWI as follows:
The crime of operating a vehicle while intoxicated is the operating of any motor vehicle, aircraft, watercraft, vessel, or other means of conveyance when:
(1) The operator is under the influence of alcoholic beverages; or
(2) The operator’s blood alcohol concentration is 0.10 percent or more by weight based on grams of alcohol per one hundred cubic centimeters of blood; or
*743 (3) The operator is under the influence of narcotic drugs, central nervous system stimulants, hallucinogenic drugs, or barbiturates.
[Underscoring added].
Thus, effective January 1, 1984, the substantive crime of DWI would be committed if a person operated a motor vehicle when his blood alcohol concentration was 0.10 percent or more grams of alcohol per 100 cubic centimeters of blood. Act 634 defined the elements of a new way the crime of DWI could be committed;[1] it did not create an irrebuttable presumption.
A presumption does not define the elements of a crime; a presumption functions as an inference of fact and as a rule of evidence that shifts the burden of producing evidence. W. Scruggs, Presumptions in the Criminal Law of Louisiana, 52 Tul.Law Rev. 793 (1978). A conclusive (irrebuttable) presumption is defined in La. R.S. 15:433 as follows:
A conclusive presumption is one against which no proof can be admitted, such as the presumption that attaches to res adjudicata, to the recitals contained in legislative acts and to the official journals of legislative proceedings.
It is highly questionable that conclusive (irrebuttable) presumptions exist in Louisiana criminal law today. La. Const, of 1974, art. I, § 16; State v. Williams, 375 So.2d 931 (La.1979); State v. Searle, 339 So.2d 1194 (La.1976); W. Scruggs, supra at pp. 800-814. A legal (rebuttable) presumption is one that relieves him in whose favor it exists from the necessity of any proof but may be destroyed by rebutting evidence. La.R.S. 15:432. La.R.S. 32:662(A)(l)(e) creates a legal (rebuttable) presumption that a person was “under the influence of alcoholic beverages” if his blood alcohol concentration was 0.10 percent or more. State v. Williams, 354 So.2d 152 (La.1977).
The statement in the majority opinion that the amendment of La.R.S. 14:98(A) by Act 634 of 1983 establishes a “conclusive presumption of intoxication” is legally wrong. The statement in Downer, adopted by the majority herein, that the PEI test, if properly administered, will “conclusively” prove the element of intoxication is also legally wrong. For example, McGuire had a right to contact a physician or other qualified person to have a second test made, and she was so advised by Trooper Hebert. La.R.S. 32:664(B). If the second test were favorable to her, McGuire could use it as evidence to refute the PEI test. La.R.S. 32:662(C). It obviously must follow that to require police officers to give legally wrong information to potential candidates for the PEI test is also legally wrong.
SUFFICIENCY OF ADVICE OF CONSEQUENCES IF PEI TEST IS CONDUCTED
La.R.S. 32:661(C) provides, in pertinent part, that “[w]hen a law enforcement officer requests that a person submit to a chemical test ... he shall first inform the person of ... the consequences if the test is conducted and the results indicate a blood alcohol concentration of .10 percent or above by weight of alcohol in the blood.” The statute does not specify what consequences of which the defendant shall be informed. As previously indicated, Trooper Barry Hebert advised McGuire she was charged with DWI and that if she took the test (1) evidence of test results of .10 or above would be used against her in court and (2) evidence of test results of .10 or above would result in a suspension of her driver’s license. This advice is satisfactory compliance with the statute. The candidate for testing (McGuire) was specifically advised that test results of .10 or above would be used against her in court to *744 prove a charge of DWI. The statute does not require the police officer to advise the candidate for testing of the elements of the two ways in which DWI by alcohol consumption can be committed: La.R.S. 14:98(A)(1) — the operator is under the influence of alcoholic beverages or La.R.S. 14:98(A)(2) — the operator’s blood alcohol concentration is 0.10 or more.[2] The statute also does not require the police officer to embark on a perilous discussion of the legal (rebuttable) presumption of La.R.S. 32:662(A)(l)(c), a subject with which even the courts have difficulty. To require police officers to discuss with testing candidates the elements of the different ways DWI can be committed and the legal effects of a rebuttable presumption would be an impractical[3] and hypertechnical interpretation of the statute, and one which, in my opinion, was not intended by the legislature.
In State v. Spence, 418 So.2d 583 (La.1982), the defendant was convicted of two counts of negligent homicide. The results of a PEI test were part of the evidence against him. At the time the offense was committed, La.R.S. 32:661(C) did not require a police officer to advise the candidate for testing of the consequences of submitting to the test (only advice on the consequences of refusing the test was required). This omission was used by the defendant in an assignment of error which was discussed by the Louisiana Supreme Court as follows:
Finally, defendant contends that he could not make a knowing and intelligent decision on submitting to the test because the form did not advise him of the consequences of submission, namely, that the results of the test could be used as evidence against him.
[Underscoring added].
[Spence, 418 So.2d at 587],
The court then held that the statute did not require such a warning and such a warning was not constitutionally required by the right against self-incrimination. Spence was decided on June 21, 1982. By Act 632 of 1983, La.R.S. 32:661(C) was amended, effective January 1, 1984, to require that the testing candidate be advised of “the consequences if the test is conducted and the results indicate a blood alcohol concentration of .10 percent or above by weight of alcohol in the blood”. As indicated in Downer, 460 So.2d at 1188, the apparent purpose of this amendment was to close the loophole in the statute which was exposed in Spence. The language in the form used to advise McGuire of the consequences of submission is similar to that used by the court in Spence. Based on this legislative history, it must be concluded that the meaning intended by the legislature for the word “consequences” as used in Act 632 of 1983 was that set forth in the Spence decision.
By analogy, it should be noted that when a person is advised of his right against self-incrimination as required by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the police officer is only required to advise the person that anything he says can be used against him in court. The police officer is not required to explain how an admission or confession will prove an element of the charge or what evidentia- *745 ry impact the admission or confession will have on the trier of fact. If such is not required for Fifth Amendment purposes, it should not be required for La.R.S. 32:661(C) purposes.
For the foregoing reasons, I respectfully dissent.[4]

. The title of Act 634 of 1983 provides, in pertinent part, that La.R.S. 14:98(A) is amended and reenacted “to provide that such crime includes operation of a vehicle with .10 percent or more blood alcohol concentration”. Although the title of an act is not a part of the substance of the act, an act must have a title indicative of its object, and the purpose of the act can be determined from its text and title. Javeler Construction Company, Inc. v. Federal Insurance Company, 472 So.2d 258 (La.App. 1st Cir.1985), writ denied, 476 So.2d 354 (La.1985).

. The bill of information in the instant case charges McGuire with DWI by operating a motor vehicle "while under the influence of alcoholic beverages”. This is a violation of La.R.S. 14:98(A)(1). McGuire is not charged with operating a motor vehicle with a blood alcohol concentration of .10 or more in violation of La.R.S. 14:98(A)(2). In this posture, it could be argued that, even if La.R.S. 32:661(C) required the police officer to advise McGuire of the elements of La.R.S. 14:98(A)(2) per Act 634 of 1983, failure to do so was harmless error because now she is not charged with violating that portion of the statute. La.C.Cr.P. art. 921.

. Since courts have difficulty with the distinctions between the elements of a criminal offense, conclusive (irrebuttable) presumptions and legal (rebuttable) presumptions, it would seem unreasonable (and thus impractical) to require police officers to master and correctly explain that which the courts have not. Further, it is unreasonable to believe that, even if a police officer acquires the necessary proficiency, a person who has consumed alcoholic beverages to the point that he is a suspect will comprehend what he is being told about the elements of the offense and the types of presumptions.

. At the time the Downer case was decided, La.R.S. 32:661(C)(2) provided as follows:
If the above procedure is not complied with, the results of the test or any reference to it is inadmissible into evidence in any criminal action or proceeding arising out of acts alleged to have been committed while the person was driving or in actual physical control of a motor vehicle upon the public highways of this state while under the influence of alcoholic beverages.
Thus, in Downer, when it was concluded that the requirements of the statute were not followed, the court was bound by statute to suppress the PEI test as evidence. This statutory requirement of suppression was repealed by Act 409 of 1984, effective September 3, 1984. The offense herein was allegedly committed on December 24, 1984, after the statutory rule of suppression was repealed. The Fifth Amendment protection against self-incrimination does not protect against chemical testing for intoxication (State v. Allen, 440 So.2d 1330 [La.1983]), and, thus, there is no constitutional requirement for suppressing evidence acquired contrary to the provisions of this state statute. If suppression is not required constitutionally or statutorily, it only can take place if a court creates a rule to do so. In fashioning such a suppression rule, a court may wish to consider the good or bad faith of the police. United States v. Leon, — U.S.-, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). Before creating a suppression rule, a court should consider the various factors which militate for and against suppression. The majority opinion suppresses the evidence without considering any of these factors.