499 So.2d 215 (1986)
Steve E. BAMBURG, Appellee,
v.
STATE of Louisiana, DEPARTMENT OF PUBLIC SAFETY, LICENSE CONTROL & DRIVER IMPROVEMENT DIVISION, Appellant.
No. 18139-CA.
Court of Appeal of Louisiana, Second Circuit.
October 29, 1986.
Thompson L. Clarke, St. Joseph, for appellee.
Wayne R. Crouch, Baton Rouge, for appellant.
Before FRED W. JONES, Jr., NORRIS and LINDSAY, JJ.
NORRIS, Judge.
This is a petition for a hardship driver's license. The petitioner, Steve Bamburg, was arrested for first-offense DWI and refused to take a photoelectric intoximeter (PEI) test. The Department of Public Safety (DPS) consequently notified him of its intention to suspend his license under LSA-R.S. 32:667 B(2). Bamburg filed this suit to review the suspension and to get a hardship license under LSA-R.S. 32:415.1. The trial court granted the hardship license and DPS appeals devolutively. We reverse.
*216 The factual context merits some attention. Officer Crumpton clocked Bamburg driving 70 m.p.h. on a state highway near St. Joseph and also noticed him weaving in his lane, even crossing the center line several times. Crumpton stopped him and, from the look of his eyes and the smell of his breath, concluded that Bamburg was drunk. He administered a "walking the centerline" test and a "finger to nose" test, both of which Bamburg failed. He then administered an "alcosensor" test. An alcosensor is a field testing device into which the suspect blows for a blood alcohol reading. It is not a PEI and is apparently not accepted as proof of intoxication. Bamburg scored .14% on the alcosensor so Crumpton Mirandized and arrested him.
On the way to the sheriff's office, Crumpton told Bamburg he would have to take a PEI test. Bamburg replied that he had already taken "a breath test." Crumpton testified that he read to Bamburg from a preprinted form the rights regarding submission to or refusal of a breath test. At the sheriff's office, Crumpton re-read the rights and offered the test three times. Bamburg persistently refused; he later testified that he thought he understood his rights at the time. R.p. 44. Crumpton also handed Bamburg a form that Bamburg says he did not read. At trial, Bamburg insisted he did not know "ahead of time" that his refusal would result in a revocation.
In his summation at trial, Bamburg reiterated that he received his warnings after he refused the PEI test. The trial court did not address this argument but obviously felt it was meritless and we agree. Bamburg's own testimony refutes it. Even though the first offer to take the test may have been extended without warnings, there were at least two later offers preceded by warnings. R.p.p. 43, 44. Bamburg nevertheless refused. His assertion has no basis in the facts and we reject it.
The trial judge concluded that Bamburg did not understand the warnings that Crumpton gave him. On this basis she declared the suspension a nullity. An arresting officer is required to give the DWI suspect certain warnings. LSA-R.S. 32:661C(1).[1] We have held that failure to administer these warnings makes the test results inadmissible. State v. Downer, 460 So.2d 1184 (La.App. 2d Cir.1984). The instant record, however, makes it abundantly clear that Officer Crumpton advised Bamburg of his rights at least twice. He had no reason to suspect that Bamburg did not understand; on the contrary, Bamburg was conscious, talkative, and responded sentiently by referring to the alcosensor test. By his own admission, Bamburg thought he understood the warnings at the time. The only evidence to the contrary is his self-serving and really unclear testimony over two months later at trial.[2] Given this state of the evidence, we are constrained to hold the trial court's finding manifestly erroneous. Bamburg understood his rights and Officer Crumpton complied with the statute. The suspension is not a nullity.
The statutory penalties flowing from refusal of the breath test are clear. Any first offense DWI suspect who refuses to submit to the PEI test will have his license suspended for 180 days. LSA-R.S. 32:667B(2).[3] *217 The suspected drunken drivers testing statutes contain provisions for hardship licenses, LSA-R.S. 32:668B(1)(a) & (b). The statute specifically provides, however, that a driver who is suspended for refusal of the test is not eligible for a hardship license during the first 90 days of this suspension. LSA-R.S. 32:668B(1)(c).[4] It is very clear that the general provisions for hardship licenses, LSA-R.S. 32:415.1,[5] have no application to cases of refusal to take the test. See Hendryx v. State, 311 So.2d 547 (La.App.3d Cir.1975); Spencer v. State, 315 So.2d 912 (La.App. 4th Cir.1975). Cases of refusal are specifically addressed in 32:667 and 668. The trial court had no authority to issue a hardship license in this case.[6]
For these reasons, we reverse the trial court. Bamburg's suspension of license is not null and void. The hardship license is invalid. The case is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
NOTES
[1] LSA-R.S. 32:661C(1) provides as follows:

C. (1) When a law enforcement officer requests that a person submit to a chemical test as provided for above, he shall first read to the person a standardized form approved by the Department of Public Safety and Corrections. The department is authorized to use such language in the form as it, in its sole discretion, deems proper, provided that the form does inform the person of the following:
(a) His constitutional rights under Miranda v. Arizona;
(b) That his driving privileges can be suspended for refusing to submit to the chemical test; and
(c) That his driving privileges can be suspended if he submits to the chemical test and such test results show a blood alcohol level of .10 percent or above.
[2] The following colloquy occurred:

Q. Do you feel like you understood everything that was taking place?
A. I thought I did but I'm not sure. I don't understand a bunch of this.
R.p. 44.
[3] LSA-R.S. 32:667B(2) provides as follows:

(2) If the person [arrested on suspicion of DWI] had refused to submit to the test, his driving privileges shall be suspended for one hundred and eighty days from the date of suspension on first refusal and five hundred forty-five days from the date of suspension without benefit of eligibility for a hardship license on the second and subsequent refusals occurring within five years of the first refusal.
[4] LSA-R.S. 32:668B(1)(c) provides as follows:

(c) No person who has refused a chemical test for intoxication is eligible for a restricted license for the first ninety days of the suspension. When a person submits to a chemical test and the results show an alcohol level of .10 percent or above by weight of alcohol he is not eligible for a restricted license for the first thirty days of the suspension.
[5] LSA-R.S. 32:415.1 provides in pertinent part:

A. (1) Upon suspension, revocation, or cancellation of a person's drivers license for the first time only as provided for under R.S. 32:414 and R.S. 32:415 said person, after initial notice from the department, shall have the right to file a petition in the district court of the parish in which the applicant is domiciled alleging that revocation of his driving privileges will deprive him or his family of the necessities of life or will prevent him from earning a livelihood. * * *
We also note that this statute applies by its own terms only to the 60-day suspension under 32:414 and not to the longer suspension authorized by 32:667.
[6] We are somewhat perplexed by the inconsistency of the trial court's holding. On the one hand, if as the court held Bamburg's suspension was null and void, then there would have been no need for a restricted license; the original, unsuspended license would still have full effect. On the other hand, if the restricted license were necessary, then the original license must have been suspended or revoked.