WATKINS, Judge.
Jack A. Bennett, Jr., was charged by bill of information with three counts of vehicular homicide, in violation of LSA-R.S. 14:32.1. He filed a motion to suppress the results of the blood tests, which revealed he was legally intoxicated when his blood alcohol concentration was measured at the hospital some time after the accident. The trial court denied defendant’s motion to suppress, and he thereafter pled guilty, reserving his right to appeal the admissibility of the blood tests. He was sentenced to serve three years at hard labor on each count, the sentences to be served consecutively. The court also ordered defendant to pay a fine of $3000.00 on each count, with an additional term of one year at hard labor in default of payment. He has appealed, urging that the tests were not admissible and that the court imposed an excessive sentence.
On June 29, 1984, defendant, while driving his vehicle, crossed the center line and collided with another vehicle in which Peggy Estay, Leontine Parks, and Justin J. Parks were riding. All three of the victims were killed as the result of the accident.
Defendant was arrested at the scene and transported by ambulance to a local hospital, where it was later determined he suffered moderate injuries. While defendant was in the hospital, a blood sample was taken and examined for blood alcohol concentration. The chemical tests revealed a concentration of .12 per cent.
MOTION TO SUPPRESS
Defendant urges the trial court erred in denying his motion to suppress, urging four ways in which the State failed to comply with the statutory authorization for blood tests to determine intoxication, LSA-R.S. 32:661, et seq.[1] The specific violations he urges are as follows:
*232 (1) the state failed to determine whether or not defendant could participate in a field sobriety test;
(2) the state did not obtain defendant’s consent to take the blood sample;
(3) the state did not adequately inform defendant of his statutory rights because he was not advised of the consequences of a blood test reading of .10% or greater; and
(4) he was not given the opportunity to request another blood test.
FIELD SOBRIETY TEST AND CONSENT REQUIREMENT
At the time of , this offense, LSA-R.S. 32:666 provided for the refusal of an individual to submit to a chemical test, and the effects of such a refusal, which we set forth in pertinent part as follows:
A. A person under arrest for a violation of R.S. 14:98 may not refuse to submit to a chemical test in any case wherein a traffic fatality has occurred or a person has sustained serious bodily injury and the person under arrest has refused or is unable to participate in a field sobriety test. In all other cases, a person under arrest for a violation of R.S. 14:98 may refuse to submit to such chemical test, after being advised of the consequences of such refusal as provided for in R.S. 32:661(C), subject to the following:
(1) His license shall be seized under the circumstances provided in R.S. 32:667.
(2) If he is a resident without a license or permit to operate a motor vehicle in this state, the department shall deny the issuance of a license or permit to such person for a period of six months after the date of the alleged violation.
(3) Evidence of his refusal shall be admissible in any criminal action or proceeding arising out of acts alleged to have been committed while the person was driving or in actual physical control of a motor vehicle upon the public highways of this state while under the influence of alcoholic beverages. However, such evidence shall not be admissible in a civil action or proceeding other than to suspend, revoke, or cancel his driving privileges.
B. In each instance that a person refuses to submit to a chemical test, after being advised of the consequences of such refusal as provided for in R.S. 32:661(C), the officer shall submit a sworn report in a form approved by the secretary that he had reasonable grounds to believe that the arrested person had been driving or was in actual physical control of a motor vehicle upon the public highways of this state while under the influence of alcoholic beverages, that he had followed the procedure in informing such person of his rights under R.S. 32:661(C), and that such person had refused to submit to the test upon the request of the officer.
[Emphasis added.]
Defendant argues the state failed to show that he refused or was unable to participate in a field sobriety test. Therefore, he argues, the state could not avail itself of the mandatory submission requirements provided whenever a traffic fatality has occurred and his consent was necessary before the blood sample could be taken. This argument has no merit.
The state presented ample evidence at the hearing on the motion to suppress from which it could be determined that defendant was unable to consent to a field sobriety test. Trooper Wichterich was the first of the investigating officers to reach defendant, who was alone in the vehicle. Wichterich testified he found defendant slumped behind the wheel with his upper torso on the seat. Wichterich shook defendant and inquired of his condition; defendant’s answer was too slurred to be understood, and Wichterich detected a *233 strong odor of alcohol. He immediately arrested defendant for driving while intoxicated, in violation of LSA-R.S. 14:98.
Wichterich specifically testified defendant was unable to participate in a field sobriety test because he was in pain and incoherent. The officer testified he did not want to jeopardize defendant or subject him to bodily harm which might result from a field sobriety test. Immediately after Wicherich’s initial investigation, medical technicians began treatment, and defendant was taken by ambulance to Slidell Memorial Hospital.
Trooper Carl Bennett was also dispatched to the scene and later interviewed defendant at the hospital. He testified defendant’s breath smelled of alcohol and his speech was slurred but he did seem coherent at the time. After ascertaining that defendant was coherent, Bennett advised him of his rights and the consequences of the blood test results, and informed him that three people had been killed in the accident. Bennett testified defendant was belligerent to the hospital staff, to the extent that at one time he was forcibly restrained by being strapped to his bed. Bennett agreed that defendant was not able to take a field sobriety test, due to his injuries and to his extreme behavior. Bennett indicated that, at the time of his interview with defendant, the staff had not yet determined the extent of his injuries, but the fact that he had been injured was evidenced by the blood on his body and clothes.
It was later determined that defendant suffered only moderate injuries. He now argues that the test results were not admissible because the officers failed to determine whether he was capable of submitting to the test. We find, however, that the evidence clearly establishes defendant was not able to take a field sobriety test.
Defendant had been arrested for driving while intoxicated, a triple fatality had occurred, and defendant was not able to take a field sobriety test. Under the plain provisions of LSA-R.S. 32:666, defendant’s consent to the blood test was not necessary, and the trial court did not err in finding the test results were not subject to suppression on these grounds.[2]
RIGHT TO OBTAIN SECOND TEST
Defendant further urges the state failed to comply with LSA-R.S. 32:664(B),[3] which provides as follows:
B. The person tested may have a physician or a qualified technician, chemist, registered nurse or other qualified person of his own choosing administer a chemical test or tests in addition to any administered at the direction of a law enforcement officer. After being advised of this right as provided in R.S. 32:661(C), he shall be given the opportunity to telephone and request the qualified person to administer such test. The failure or inability to obtain an additional test by a person shall not preclude the admission of evidence relating to the test or tests taken at the direction of a law enforcement officer. [Emphasis added.]
He argues the test results are not admissible because he was not given the opportunity to take another test. However, both the “Advice of Rights” form and Trooper Bennett advised defendant he had this right. Defendant does not argue that he requested and was denied the opportunity to take an additional test. Further, defendant’s attorney arrived at the hospital soon after the police officers and was permitted the opportunity to consult with his client. The record does not reflect that defendant’s attorney sought the opportunity for another test. Rather, he attempted to *234 wrestle the blood sample from the technician.
The record clearly reflects that defendant was advised of his right to obtain an additional test and that he did not invoke this right. LSA-R.S. 32:664(B) specifically provides that his failure to invoke this right does not preclude the admission of the test results of the sample obtained by law enforcement officers.
CONSEQUENCES OF PRESUMPTION OF INTOXICATION
Defendant submits that the trial court erred in finding the results of the blood test were admissible because he was not notified of the consequences of submission to the blood alcohol test, as required by LSA-R.S. 32:661. Citing State v. Singer, 457 So.2d 690 (La.App. 4th Cir.), writ denied, 458 So.2d 465 (La.1984), he argues that suppression of the test results is mandated because he was not advised of the consequences which would result from a test reading of .10 percent or above. In Singer, the Fourth Circuit found that a prosecution for driving while intoxicated is a natural consequence of a reading of .10 percent or above and reversed the defendant’s conviction because he was not advised of this consequence.
At the time of defendant’s arrest, LSA-R.S. 32:661 provided as follows:
C. When a law enforcement officer requests that a person submit to a chemical test as provided for above, he shall first inform the person of the consequences of a refusal and the consequences if the test is conducted and the results indicate a blood alcohol concentration of .10 percent or above by weight of blood. In addition, the law enforcement officer shall have the person sign a standard form advising such person of his constitutional rights. The law enforcement officer shall have the person sign a separate form advising such person of the consequences of his refusal to submit to a chemical test. However, a single combination of the two forms may be used. If the person is unable or unwilling to sign the form, the law enforcement officer shall certify that such person was informed of his constitutional rights and was unable or unwilling to sign said form.
The interpretation of the term “consequences” by the various courts of appeal resulted in divergent and conflicting jurisprudence. In State v. McGuire, 493 So.2d 559 (La.1986), the Louisiana Supreme Court reversed a previous ruling of this court, 481 So.2d 740 (La.App. 1st Cir.1985), and held that sufficient compliance with the notice requirements was made by a notification that test results of .10 percent or above would be used against the subject in court, and that if the subject submitted to the test and the results showed a blood alcohol level of .10 percent or above his license would be suspended for a minimum of three months. The court specifically declined to interpret LSA-R.S. 32:661 as requiring a law enforcement officer to embark upon a discussion of the legal consequences of a blood alcohol content other than these specific notifications. As the instant case illustrates, there are a myriad of consequences which can follow test results of .10 percent or above. While a prosecution for driving while intoxicated may follow, other possible consequences include prosecution for vehicular homicide and vehicular injury.
We find the record clearly indicates defendant was properly advised of the consequences of submitting to the blood test. Trooper Carl Bennett testified he read the “Advice of Rights” form to defendant before going over each provision with him. He testified defendant was told that the blood taken could be used against him, and that three persons had been killed in the accident. The rights form was admitted into evidence, and it, too, notified defendant of the consequences and effects of submission or refusal to submit to the chemical test, specifically (1) that the results of .10 per cent or above would be used against him in court; and (2) if he submitted to the test and the test results showed a blood alcohol level of .10 per cent *235 or above, his driver’s license would be suspended for a minimum period of three months.
Accordingly, we find the trial court did not err in denying defendant’s motion to suppress the results of the blood test.
EXCESSIVE SENTENCE
By assignment of error number two, defendant submits the trial court imposed an excessive sentence. He argues the trial court did not consider applicable mitigating factors which include his youth, his family, the absence of previous felony convictions, and the fact that he entered guilty pleas to the charges.
The trial court specifically addressed the hardships which would be suffered by defendant’s family. The court further noted, however, defendant’s history of arrests. Within the five years preceding the instant offense, defendant had twice been convicted of driving while intoxicated. At the time of the instant offense defendant had previously been arrested for second offense driving while intoxicated and driving under suspension, offenses for which he was convicted after the instant offense occurred. Notwithstanding this arrest and his prior conviction, defendant again drove while intoxicated and without a driver’s license, killing three persons. The trial court concluded, and we agree, that defendant obviously has a drinking problem and should not have been driving at the time of this offense.
The maximum term of imprisonment which can be imposed for a single count of vehicular homicide is five years at hard labor. The sentencing court is required to impose a term of at least two years with or without hard labor. LSA-R.S. 14:32.1.
Defendant was sentenced to serve three years at hard labor for each count, the sentences to be served consecutively. Each sentence separately is well within the statutory limitations and is not apparently severe. We find the individual sentences, only slightly more than the minimum, are not excessive. The mitigating factors to which defendant refers were obviously considered by the trial court in imposing a sentence less than the maximum permissible.
Although concurrent, rather than consecutive sentences are the rule, consecutive sentences are reserved for the worst offenses and the worst offenders. Defendant’s past conduct has shown him to be unmindful of the safety of others. He is habitually a drunk driver who has not learned from his past experiences. We find him to be one of the worst possible perpetrators of vehicular homicide.
Defendant was also sentenced to pay a fine of $3,000.00 for each conviction, and to serve one year at hard labor in default of payment. He argues the fine is excessive and, since he will be unable to pay the fine, he will actually be forced to serve four years on each count.
The sentencing court was required to impose a fine of at least $2,000.00, but less than $5,000.00. The fine actually imposed is only slightly more than the minimum. We do not find this penalty provision excessive. Although we are aware that defendant must pay a total fine of $9,000.00 or face an additional three years imprisonment, we do not find this sentence to be nothing more than needless suffering.
The trial judge is given a wide discretion in the imposition of sentences within statutory limits, and the sentence imposed by him should not be set aside as excessive in the absence of a manifest abuse of his discretion. The penalty imposed must be so grossly disproportionate to the crime committed, in light of the harm caused to society, as to shock our sense of justice. State v. Cann, 471 So.2d 701 (La.1985). We do not find the sentence imposed herein to be an abuse of discretion.
The conviction and sentence are affirmed.
CONVICTION AND SENTENCE AFFIRMED.

. The state argues only that defendant may not raise the denial of his motion to suppress. In *232 State v. Crosby, 338 So.2d 584 (La.1976), the Louisiana Supreme Court determined that a reviewing court may consider assignments of error specifically reserved at the time of the plea of guilty, where the trial court accepted the plea so conditioned. Defendant specifically preserved his right to seek review of the denial of his motion to suppress the blood test results.

. Moreover, although it is not necessary for the determination of this case, we note Trooper Bennett testified that defendant did consent to the blood test.

. Defendant argues this right is afforded by LSA-R.S. 32:661(C); although that statute does require that defendant be notified of the right to an additional test (through the Advise of Rights form) the actual right is provided by LSA-R.S. 32:664(B).