308 So.2d 780 (1975)
STATE of Louisiana
v.
Howard JUNELL.
No. 55358.
Supreme Court of Louisiana.
February 24, 1975.
*781 Roland J. Achee, Nelson & Achee, Ltd., Shreveport, for defendant-relator.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Charles A. Marvin, Dist. Atty., James S. Harris, Asst. Dist. Atty., for plaintiff-respondent.
BARHAM, Justice.
Defendant Howard Junell was charged by bill of information with operating a motor vehicle upon a public highway while under the influence of alcoholic beverages, in violation of La.R.S. 14:98. The case was tried on June 18, 1974, and the court found the defendant guilty as charged, sentencing him to a fine of $250.00 and costs or sixty days in jail, and to serve thirty days in jail, the latter thirty-day sentence being suspended on good behavior.
During the trial it developed that on the evening of December 31, 1973 and in the early morning hours of January 1, 1974, the defendant was operating a large truck along Interstate Highway 20; while passing through Webster Parish, Louisiana, he apparently lost control of the truck and drove into a ditch along the side of the road. After the wreck, he was taken to a local hospital where a sample of his blood was drawn at the request of Louisiana State Trooper W. L. Valentine. Trooper Valentine admonished the defendant that he could lose his driver's license for up to six months for refusing to take the blood test or chemical analysis; therefore, the test was demanded and obtained under the "implied consent statute," La.R.S. 32:661 et seq. The blood sample was subsequently analyzed by Mr. Harvey French, a medical technician for the Richardson Clinic in Minden, Louisiana.
*782 The State called Mr. French as a witness, and over the defendant's objection, the court accepted French as a qualified expert witness in the field of the calculation or the performance of blood tests. The defendant objected to Mr. French's testimony as an expert witness, particularly the testimony regarding the analysis of the blood sample taken from the defendant. It was defendant's contention that the witness was not qualified to testify as to the blood analysis because he had no permit from the State Department of Health as required by La.R.S. 32:663. Defense counsel perfected a bill of exceptions relative to the issue of the lack of a permit. Following his conviction, defendant applied to this Court for writs of certiorari, mandamus and prohibition, which were granted.
The issue we must resolve is whether the language of La.R.S. 32:663 is mandatory or directory in its requirement of a permit; peripherally, we must decide what effect, if any, La.R.S. 32:664 has upon the requirement in La.R.S. 32:663.
La.R.S. 32:663 provides as follows:
"Chemical analyses of the person's blood, urine, breath or other bodily substance, to be considered valid under the provisions of this Part, shall have been performed according to methods approved by the state department of health and by an individual possessing a valid permit issued by said department for this purpose. The state department of health is authorised to approve satisfactory techniques or methods, to ascertain the qualifications and competence of individuals to conduct such analyses, and to issue permits which shall be subject to termination or revocation at the discretion of the department." (Emphasis here and elsewhere supplied).
There is no disagreement about the fact that Mr. French did not possess a permit as described by the statute. We hold that he was therefore not qualified to perform the analysis of the blood nor was he qualified to testify as to that analysis because the language of the statute is mandatory.
La.R.S. 32:663 appears to have been taken almost verbatim from § 11-902(c) of the Uniform Vehicle Code (1962),[*] which is discussed in R. Donigan, Chemical Tests and the Law 66,99 (published by the Northwestern University Traffic Institute, 1966). Donigan sees this provision as a suggestion by the redactors of the Uniform Vehicle Code that there be legislation in each state requiring supervision on the state level of all chemical test programs, including the checking by the state of the qualifications of all persons who conduct such tests for the purpose of determining alcoholic influence. Therefore, in order for chemical test evidence to be admissible under such a statute, the State must establish as a condition precedent that whoever conducted the analysis had a permit to conduct that type of test.
Although the issue is res nova in this Court, several other jurisdictions have considered it and have been in accordance with Donigan in construing as mandatory their respective statutes, all of which were similar to the one in the Uniform Vehicle Code.
The case most similar to the one before us is Otte v. State, 172 Neb. 110, 108 N. W.2d 737 (1961), a reversal of a conviction wherein the court held that the words "Tests to be considered valid * * * shall" indicate that it was the intention of the legislature to condition the right to use the tests on meeting the two requirements, i. e., an analysis by an individual who had *783 been issued a permit to make such an analysis, and an analysis according to a method approved by the state department of health. The court held that a pathologist who analyzed the blood sample in that case was not shown to have met either test, and therefore the evidence of the analysis was properly objected to and should not have been allowed.
In State v. Gallant, 108 N.H. 72, 227 A. 2d 597 (1967), the New Hampshire Supreme Court held that their statute was mandatory, not directory, in its requirements, and lack of substantial compliance formed the basis for a reversal. In Jones v. Forrest City, 239 Ark. 211, 388 S.W.2d 386 (1965), the Arkansas Supreme Court reversed a conviction because the state had not met its burden of proving that the analysis was done by an approved method; the court held that failure of the record to reflect such evidence was reversible error.
We find the reasoning in these cases to be persuasive, and we therefore align Louisiana with those states which have construed the permit requirement to be mandatory. It was apparently the intent of the legislature in enacting La.R.S. 32:663 to provide motorists who are deemed to have consented to such tests with the protection of the right to know that the person analyzing their blood has been deemed qualified to do so by the State and that the procedure used complies with the minimum standards set by the department of health.
We now turn to the State's argument that a reading of La.R.S. 32:663 in the context of the section that follows it renders inescapable the conclusion that the former is merely directory. La.R.S. 32:664 provides:
"A. When a person submits to a blood test at the request of a law enforcement officer under the provisions of R.S. 32:662, only a physician, registered nurse, qualified technician or chemist may withdraw blood for the purpose of determining the alcoholic content therein. This limitation shall not apply to the taking of breath specimens.
"B. The person tested may have a physician or a qualified technician, chemist, registered nurse or other qualified person of his own choosing administer a chemical test or tests in addition to any administered at the direction of a law enforcement officer. After being advised of this right as provided in R.S. 32:661(C), he shall be given the opportunity to telephone and request the qualified person to administer such test. The failure or inability to obtain an additional test by a person shall not preclude the admission of evidence relating to the test or tests taken at the direction of a law enforcement officer.
"C. No person who administers any such test upon the request of a law enforcement officer as herein defined, no hospital in or with which such person is employed or otherwise associated or in which such test is administered, and no other person, firm or corporation by whom or which such person is employed or is in any way associated, shall be in any wise criminally liable for the administration of such test, or civilly liable in damages to the person tested."
The State contends that Mr. French was a "qualified technician" within the meaning of La.R.S. 32:664, and was therefore authorized to make the tests without a permit, La.R.S. 32:663 having been enacted, in the State's opinion, to require permits only of those persons whom law enforcement agencies desire to use as experts in the field of analyses but who possess no general specialized training in the field such as would be possessed by a physician, nurse, qualified technician, or chemist. However, it is our opinion that La.R.S. 32:664 applies only to the actual withdrawing of blood, as appears from the clear wording of the section, whereas La. R.S. 32:663 applies to a separate act, the subsequent analysis in a laboratory.
There is a valid reason for restricting the class of persons who may withdraw a blood sample. To withdraw blood, one must invade the body of a person, and there is a possibility of causing pain *784 and/or infection; therefore, the legislature has provided that only those persons who are presumably skilled at drawing blood shall be allowed to do so for the purposes of chemical analysis. On the contrary, no particular skill at drawing blood is necessary in order to perform an analysis of it, just as no particular skill at analyzing blood is necessary in order to draw it. These are two separate acts, each requiring a different type of expertise, and the State need only require that the analyst comply with those minimum standards set for the acquiring of permits. Mr. French may well have been qualified to withdraw the defendant's blood under La.R.S. 32:664 but that did not render him qualified to analyze the blood under La.R.S. 32:663 absent a permit. For these reasons, we hold that the State's argument is without merit.
For the reasons assigned, the defendant's conviction and sentence are reversed, and the case is remanded to the district court for proceedings in accordance with our holding.
NOTES
[*] That section reads as follows:

`"Chemical analyses of the person's blood, urine, breath, or other bodily substance to be considered ralid under the provisions of this section shall have been performed according to methods approved by the State department of health and by an individual possessing a valid permit issued by the State department of health for this purpose. The State department of health is authorized to approve satisfactory techniques or methods, to ascertain the qualifications and competence of individuals to conduct such analyses, and to issue permits which shall be subject to termination or revocation at the discretion of the State department of health."