478 So.2d 673 (1985)
STATE of Louisiana, Respondent,
v.
James C. FORTNER, Applicant.
No. 17406-KW.
Court of Appeal of Louisiana, Second Circuit.
October 30, 1985.
*674 Boles & Mounger by Charles H. Ryan, Monroe, for applicant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., New Orleans, William R. Coenen, Jr., Dist. Atty., Stephen G. Dean, Asst. Dist. Atty., Winnsboro, for respondent.
Before HALL, FRED W. JONES, Jr. and SEXTON, JJ.
HALL, Chief Judge.
Defendant, James C. Fortner, was found guilty as charged of driving while intoxicated in violation of LSA-R.S. 14:98. The court sentenced the defendant to pay a fine of $500.00 and costs, or in default thereof serve 60 days in the parish jail, and to a jail term of 30 days. The jail term was suspended and the defendant was placed on unsupervised probation for a period of one year with three special conditions of probation.
The defendant's application for review asserts the following assignments of error: (1) the blood sample was extracted by Norma Willis, but the state offered no evidence to establish her as being an individual in possession of a valid permit for this purpose issued by the Department of Public Safety as required by LSA-R.S. 32:663; (2) there was no evidence introduced by the state to establish that the sheriff's department *675 of Franklin Parish, Louisiana or the town of Wisner, Louisiana had designated the blood alcohol test as the test which either one of those agencies would administer as is required by LSA-R.S. 32:661 A; (3) the taking of the blood alcohol test was not preceded by a correct and fully informed warning to Mr. Fortner of the consequences of the taking of the blood test as is required by LSA-R.S. 32:661 C; and (4) the results of the blood alcohol test performed by Susan T. Rutledge did not establish that she was a technician who was qualified to administer this test and to perform the blood alcohol analysis or that she was an individual in possession of a valid permit for that purpose as is required by LSA-R.S. 32:663.
Finding no merit to defendant's assignments of error, the conviction is affirmed.

FACTS
On October 26, 1984, Otis Roberts of the Wisner City Police Department observed the defendant's gray Cadillac turning right on Oakley Road three miles north of Wisner. Officer Roberts had received information that this car had been travelling "all over the road and running off of the road." The caller had also given the officer a license number which matched the license number of the defendant's car. After stopping the defendant's vehicle, Officer Roberts asked the defendant to step out of the car and to show him his driver's license. Officer Roberts observed two vodka bottles on the rear floorboard of the defendant's car and the defendant, in attempting to show his driver's license, dropped his "papers" all over the road. The defendant stated to Officer Roberts that he was travelling from New Orleans and had been drinking along the way. Officer Roberts placed the defendant under arrest and transported him to Winnsboro to conduct a blood alcohol test.
Norma Willis, a lab technician at the Franklin Parish Hospital, was called to the sheriff's department to withdraw blood from the defendant. The blood was analyzed by the North Louisiana Criminalistics Laboratory and was determined to contain 0.22 percent alcohol. The blood alcohol test forms the basis of defendant's assignments of error.

ASSIGNMENT OF ERROR NUMBER 1
By this assignment, defendant contends that the state did not lay a proper foundation for the admissibility of the blood alcohol test because the person who withdrew the defendant's blood did not testify that she possessed a permit issued by the Department of Public Safety for the purpose of extracting a blood sample as required by LSA-R.S. 32:663 and LSA-R.S. 32:664 A.
LSA-R.S. 32:663 provides as follows:
Chemical analysis of the person's blood, urine, breath or other bodily substance, to be considered valid under the provisions of this part, should have been performed according to methods approved by the Department of Public Safety and by an individual possessing a valid permit issued by said department for this purpose. The Department of Public Safety is authorized to approve satisfactory techniques or methods, to ascertain the qualification and competence of individuals to conduct such analysis, and to issue permits which shall be subject to termination or revocation at the discretion of the department.
LSA-R.S. 32:664 A provides in pertinent part:
When a person submits to a blood test at the request of a law enforcement officer under the provision of R.S. 32:662, only a physician, registered nurse, qualified technician or chemist may withdraw blood for the purpose of determining the alcoholic content therein....
In State v. Junell, 308 So.2d 780 (La. 1975), the court found that LSA-R.S. 32:664 applies only to the withdrawing of blood whereas LSA-R.S. 32:663 applies to the separate subsequent act of analysis in the laboratory. Thus, the court found that a person may be qualified under LSA-R.S. 32:664 to withdraw blood from a defendant but unqualified to analyze blood under LSA-R.S. 32:663. Therefore, the permit *676 requirement of Section 663 does not apply to the person withdrawing the blood; however, the person withdrawing the blood must be qualified under Section 664.
In the present case, the person who withdrew the defendant's blood, Norma Willis, testified that she was a lab technician at the Franklin Parish Hospital and that her duties in connection with her job included drawing blood. Although Ms. Willis was not shown to hold a special certification, Ms. Willis' occupation indicates that she is a "qualified technician" within the meaning the LSA-R.S. 32:664. In State v. Welch, 468 So.2d 599 (La.App. 2d Cir.1985) this court found that "technician" has been defined as "a specialist in the technical details of a subject or occupation or one who has acquired the technique of an art or other area of specialization," Webster's New Collegiate Dictionary, Eighth, (1976) and as "one versed in the technicalities of a subject," The American College Dictionary, (1966). Ms. Willis is a qualified technician under these definitions. This assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER 2
By this assignment, defendant contends that the state offered no evidence to prove that the Franklin Parish Sheriff's Office or the town of Wisner had designated that the blood test would be the test to be used by these law enforcement agencies. Defendant contends that LSA-R.S. 32:661 A requires that the officer in charge of the law enforcement agency designate in advance that the blood alcohol test be the test to be used by law enforcement agencies in Franklin Parish.
LSA-R.S. 32:661 A provides:
Any person who operates a motor vehicle upon the public highways of this state shall be deemed to have given consent subject to the provisions of LSA-R.S. 32:662, to a chemical test or test of his blood, breath, urine, or other bodily substance for the purpose of determining the alcoholic content of his blood if arrested for any offense arising out of acts alleged to have been committed while the person was driving or in actual physical control of a motor vehicle while believed to be under the influence of alcoholic beverage. The test or tests shall be administered at the direction of a law enforcement officer having reasonable grounds to believe the person to have been driving or in actual physical control of a motor vehicle upon the public highways of this state while under the influence of alcoholic beverages. The law enforcement agency by which such officer is employed shall designate which of the aforesaid tests shall be administered.
Officer Roberts testified that the blood test was the kind of test always used by the town of Wisner and the Franklin Parish Sheriff's Office, although he did not know of any kind of official designation having been made. The statute does not require a formal written designation by the law enforcement agency nor that the designation be made in advance of a particular arrest and testing. It is clear from the officer's testimony that the law enforcement agencies involved here had designated the blood test as the test to be used as it was the kind of test they always used. This assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER 3
By this assignment, the defendant contends that prior to his consent to the blood alcohol test he was not adequately warned of the consequences of taking the blood test as required by LSA-R.S. 32:661 C.
LSA-R.S. 32:661 C provides:
When a law enforcement officer requests that a person submit to a chemical test as provided for above, he shall first inform the person of the consequences of a refusal and the consequences if the test is conducted and the results indicate a blood alcohol concentration of .10 percent or above the weight of alcohol in the blood. In addition, the law enforcement officer shall have the person sign a standard form advising such person of his constitutional rights. The law enforcement officer shall have the person sign a separate form advising such person of the consequences of his refusal to submit *677 to a chemical test. However, a single combination of the two forms may be used. If the person is unable or unwilling to sign the form, the law enforcement officer shall certify that such person was informed of his constitutional rights and was unable or unwilling to sign said form.
Prior to the defendant's consent to the blood alcohol test, Officer Roberts read to the defendant his rights relating to the chemical test for intoxication from a form provided by the Louisiana Department of Public Safety. The form states in pertinent part:
A. These are the CONSEQUENCES AND EFFECTS OF SUBMISSION OR REFUSAL TO SUBMIT TO THE CHEMICAL TEST.
1. Refusal to submit to this chemical test shall result in the suspension of your driver's license for a minimum period of six (6) months.
2. Refusal to submit to this chemical test may also result in the loss of your vehicle registration and license plates.
3. Evidence of your refusal to submit to this chemical test or test results of .10 percent or above will be used against you in court.
NOTE: If a traffic fatality has occurred or a person has been seriously injured you may not refuse the chemical test, if you have refused or are unable to participate in a field sobriety test.
Defendant objected to the admissibility of the blood test on the grounds that the officer requesting defendant to submit to the chemical test did not inform the defendant of the consequences if the test is conducted and the results indicate a blood alcohol concentration of .10 percent above by weight of alcohol in the blood as required by LSA-R.S. 32:661 C. Defendant relied on State v. Downer, 460 So.2d 1184 (La. App. 2d Cir.1984).
In Downer, this court held that in order to comply with the statute the officer must advise the person that if the test indicates a blood alcohol content of .10 or above the test will be conclusive proof of intoxication. The court found that the blood test evidence should have been excluded under the provisions of LSA-R.S. 32:661 C(2) which expressly provided that if the warning procedure is not complied with, "the results of the test or any reference to it is inadmissible into evidence in any criminal action or proceeding arising out of acts alleged to have been committed while the person was driving or in actual physical contend of a motor vehicle on the public highways of this state while under the influence of alcoholic beverages." See also State v. Singer, 457 So.2d 690 (La.App. 4th Cir.1984) and State v. Cole, 466 So.2d 66 (La.App. 2d Cir.1985).
State v. Downer was decided under the statute as it read prior to the adoption of Act 409 of 1984 which amended and reenacted Section 661 C. As amended and reenacted, subsection C(2) was deleted from the statute.
Although the requirement that the person be informed of the consequences of a test indicating a blood alcohol content of .10 or above remains in the statute, the provision that the results of the test will not be admissible into evidence if the warning procedure is not followed has been deleted. The obvious legislative intent in deleting that provision was to do away with the sanction of inadmissibility where the warning procedure is not followed. Exclusion of the test results under those circumstances is no longer required by statute.
There is no constitutional infringement involved in subjecting persons suspected of driving while intoxicated to a chemical test and no constitutional requirement that such persons be advised of the consequences of taking the test and of adverse test results. State v. Spence, 418 So.2d 583 (La.1982). The failure of a law enforcement officer to comply with the procedure required by statute offends no constitutional rights of the person to be tested. Accordingly, the drastic remedy or sanction of the judicially created exclusionary rule, designed to deter wrongful police conduct which impinges on constitutionally protected rights, need not and should not be applied to exclude chemical *678 test evidence obtained without compliance with the statutory warning procedure. Compliance by law enforcement officers with the statutory requirements is a matter which should be required and regulated internally within the law enforcement agencies.
The court has excluded chemical test evidence where the testing requirements of the statute and the Department of Public Safety regulations have not been strictly complied with. These requirements, however, go to the reliability and accuracy of the evidence and no question of reliability or accuracy is involved in failure to follow the warning procedure.
Although the written advisement of rights relating to the chemical test given in this case and acknowledged by the defendant was not as complete as required by Downer, the defendant here was advised to some extent of the consequences of taking the test in that he was advised that the evidence of test results of .10 per count or above "will be used against you in court." As noted by this court in the recent case of State v. Kerth, 476 So.2d 945 (La.App. 2d Cir.1985), the thrust of the Downer opinion was to require that an adequate warning be given and not to specify the precise wording of the warning which must be given. In Kerth, the defendant was given the same warning as in the instant case and was additionally orally warned that "evidence of test results of .10 percent or above will be admissible in court, and will be presumptive evidence of intoxication." The warning was held to be sufficient in that case, and the court did not have to decide the effect of the 1984 amendment on the admissibility of the test results evidence.
Our specific holding in this case is that although the statute requires that a person requested to take a chemical test be informed of the consequences of taking the test and of the results thereof in the manner set forth in the Downer and Kerth cases, a failure to follow that procedure will not result in the exclusion of the chemical test evidence in a prosecution for driving while intoxicated.[1]
This assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER 4
By this assignment, defendant contends that the result of the blood alcohol test should not have been admitted into the evidence in that the state did not establish that Susan T. Rutledge had a valid permit at the time the analysis was made and did not comply with the provisions of LSA-R.S. 32:663 by showing Ms. Rutledge competent to conduct the blood alcohol test analysis.
The criminalistic laboratory report and certificate admitted into evidence complied in all respects with LSA-R.S. 15:499 et seq. and is prima facie proof of its contents. The report reflects that the analyst, Ms. Rutledge, is the holder of a permit and thereby qualified to perform a chemical analysis of a person's blood. This assignment of error is without merit.

DECREE
For the reasons assigned, the conviction is affirmed.
AFFIRMED.
NOTES
[1] LSA-R.S. 32:661 C was amended by Act 382 of 1985, effective September 6, 1985, to read as follows:

C. When a law enforcement officer requests that a person submit to a chemical test as provided for above, he shall first read to the person a standardized form approved by the Department of Public Safety and Corrections. The department is authorized to use such language in the form as it, in its sole discretion, deems proper, provided that the form does inform the person of the following: (a) his constitutional rights under Miranda v. Arizona; (b) that his driving privileges can be suspended for refusing to submit to the chemical test; and (c) that his driving privileges can be suspended if he submits to the chemical test and such test results show a blood alcohol level of .10 percent or above. In addition, the arresting officer shall, after reading said form, request the arrested person to sign the form. If the person is unable or unwilling to sign, the officer shall certify that the arrestee was advised of the information contained in the form and that the person was unable to sign or refused to sign.
The 1985 amendment is not applicable to the present case in which the offense and conviction occurred prior to the effective date of the amendment.