501 So.2d 931 (1987)
STATE of Louisiana, Appellee,
v.
Robbie H. SKEETOE, Appellant.
No. 18236-KA.
Court of Appeal of Louisiana, Second Circuit.
January 21, 1987.
*933 Sanders & Sanders by Martin S. Sanders, Jr., Winnfield, for appellant.
William J. Guste, Jr., Atty. Gen., Baton Rouge, Don C. Burns, Dist. Atty., Iley H. Evans, Asst. Dist. Atty., Columbia, for appellee.
Before JASPER E. JONES, FRED W. JONES, JR. and SEXTON, JJ.
JASPER E. JONES, Judge.
Defendant, Robbie H. Skeetoe, was charged by bill of information with driving while intoxicated, third offense, in violation of LSA-R.S. 14:98. This case was consolidated for trial with two misdemeanor cases involving a charge of failure to maintain control, in violation of LSA-R.S. 32:58 and a charge of driving under a suspended license, in violation of LSA-R.S. 32:415. Defendant waived his right to trial by jury and was found guilty of all charges by the trial judge. Defendant was sentenced to serve one year in the parish jail on the charge of driving while intoxicated, fined $100.00 or ten days in jail on the failure to maintain control charge and fined $350.00 or sixty days in jail on the driving under revocation charge. We granted defendant's writ application on the misdemeanor convictions and ordered them consolidated with the appeal of the D.W.I. felony conviction. Defendant relies upon seven assignments of error for reversal of his convictions. We reverse defendant's conviction on the charge of driving while intoxicated, third offense. We affirm the misdemeanor convictions and recall the writ.

The Facts
On January 25, 1985, at approximately 8:30 a.m., Nelda Steele, an ambulance attendant, was summoned to an accident scene which was about 150 yards from her place of employment. Upon arriving at the scene, Ms. Steele observed defendant, slumped behind the wheel of a small station wagon which had left the road, hit a culvert and finally stopped in a ditch. Ms. Steele climbed into the vehicle through a window and found defendant unconscious. Ms. Steele, while waiting for an ambulance and supporting defendant's head, smelled a strong odor of alcohol emanating from defendant. There were no other passengers in the vehicle and the ignition switch was on, but the motor was not running. Defendant was taken by ambulance to the Citizen's Medical Center in Columbia, Louisiana.
Trooper Johnny Paine arrived at the scene shortly after the ambulance departed and, after a short investigation, proceeded to the hospital where he observed defendant on a stretcher in the emergency room. He detected a strong odor of alcohol emanating from the defendant and heard the defendant's incoherent speech. Officer Paine advised defendant of his Miranda rights and placed him under arrest for *934 D.W.I. Officer Paine requested defendant to submit to a chemical test for intoxication and read to him the provisions of the Department of Public Safety form No. 4615 entitled "Rights Related To Chemical Test For Intoxication." Defendant verbally consented to the blood alcohol test and a nurse at the hospital, Mr. Jerry Poole, withdrew blood from defendant. The blood was analyzed by the North Louisiana Criminalistics Laboratory and was determined to contain 0.36 grams percent alcohol.

Assignment of Error No. 1
By this assignment, defendant contends the trial court erred in denying his Motion to Suppress his prior D.W.I. convictions which were the predicate offenses for his D.W.I. third offense. Defendant argues he was not represented by counsel when he pleaded guilty to his first D.W.I. offense and he was not fully advised of his right against self-incrimination when he pleaded guilty to his second D.W.I. offense.
The State relied upon prior convictions dated August 14, 1980 and October 14, 1983 as the predicate offenses for the D.W.I., third offense, charge. The transcripts of these proceedings were filed into evidence and defendant stipulated that he was the defendant in these proceedings. On August 14, 1980, defendant appeared before the Thirty-Fifth Judicial District Court for the Parish of Grant and was informed of the charge against him.[1] The court asked if he had an attorney and defendant responded stating he did not have an attorney, but could afford one. The court informed defendant that it would appoint an attorney if he could not afford one, but defendant stated he desired to waive his right to an attorney and plead guilty. The trial judge accepted his plea.
On October 14, 1983, defendant appeared before the Twenty-Eighth Judicial District Court for the Parish of LaSalle and was informed of the charges against him.[2] Defendant's *935 *936 attorney informed the court defendant desired to plead guilty, as part of a plea bargain, to D.W.I., second offense. After advising defendant of his Boykin rights, the trial judge accepted defendant's guilty plea.
Absent a knowing and intelligent waiver, no person may be imprisoned for any offense unless he was represented by counsel at trial. Argersinger v. Hamlin, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972); State v. LaFleur, 391 So.2d 445 (La. 1980).
Before the trial court can accept a defendant's waiver of counsel the record must indicate the court attempted to determine defendant's literacy, competency, understanding and volition. State v. Bell, 381 So.2d 393 (La.1980); State v. LaFleur, supra. The court should make defendant aware of the dangers and disadvantages of self-representation, so that the record will establish that "he knows what he is doing and his choice is made with eyes open." Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); State v. Bell, supra; State v. Smith, 479 So.2d 1062 (La.App.3d Cir.1985).
An uncounseled D.W.I. conviction may not be used to enhance punishment on a subsequent offense, absent a knowing and intelligent waiver of counsel. State v. Wiggins, 399 So.2d 206 (La.1981); State v. Franklin, 337 So.2d 1152 (La.1976).
The transcript of the proceeding on August 14, 1980, shows the trial judge inquired as to whether Skeetoe had an attorney. The trial judge asked defendant if he was able to employ an attorney and advised him that one would be appointed if he could not. A review of the transcript of the proceeding where the waiver of counsel was made reflects the trial judge failed to adequately determine defendant's literacy, competency, understanding, volition and to advise him of the dangers and disadvantages of self-representation. Therefore, the record fails to show defendant made a knowing and intelligent waiver of counsel on the 1980 D.W.I. charge and the trial judge was in error in denying defendant's Motion to Suppress this 1980 conviction.
We find meritless defendant's argument that the trial judge erred in denying his Motion to Suppress the 1983 D.W.I. conviction because he was not fully advised of his right against self-incrimination.
When a misdemeanor guilty plea is used as a basis for actual imprisonment, enhancement of actual imprisonment or conversion of a subsequent misdemeanor into a felony, it is incumbent upon the trial judge to inform the defendant that by pleading guilty he waives (a) his privilege against compulsory self-incrimination; (b) his right to trial and jury trial where applicable; (c) his right to confront his accusers, and the trial judge must make sure the *937 accused has a full understanding of what his plea connotes and of its consequences. State v. Jones, 404 So.2d 1192 (La.1981); State v. Waltman, 420 So.2d 516 (La. App.2d Cir.1982). This rule applies to guilty pleas entered after September 24, 1981, the effective date of the Jones decision. State v. Moore, 416 So.2d 1298 (La. 1982).[3]
The transcript of the Skeetoe proceeding on October 14, 1983, shows the trial judge informed defendant of his privilege against compulsory self-incrimination, his right to trial and jury trial and his right to confront his accusers before accepting defendant's guilty plea. The trial judge further inquired as to defendant's education, health and his understanding of the consequences of his guilty plea. This was sufficient to render defendant's guilty plea free and voluntary with an express and knowing waiver of his rights. See State v. Nuccio, 454 So.2d 93 (La.1984). Because the trial judge in the Skeetoe proceedings on October 14, 1983, fully advised defendant of his constitutional rights under Boykin, this conviction served as a viable predicate offense.
When the evidence does not support a conviction of the crime charged, but supports a conviction on a lesser and included offense, this court is authorized to enter a judgment of guilty of the lesser and included offense. State v. Byrd, 385 So.2d 248 (La.1980); State v. Grissom, 467 So.2d 858 (La.App.2d Cir.1985).
In the instant case, we find the record establishes sufficient evidence to convict defendant of the lesser included offense of D.W.I., second offense.

Assignments of Error Nos. 2 and 5
By these assignments, defendant contends the trial court erred in overruling his Motion to Suppress the blood alcohol analysis for intoxication without a foundation showing compliance with the rules required for the admissibility of blood tests set forth in the Louisiana Register. Defendant argues he was unable to sign the consent to the chemical test because of his injuries and absent a showing he was driving the vehicle so as to activate the implied consent provision (LSA-R.S. 32:661), he was not afforded an opportunity to withdraw his consent and the test was, therefore, invalid. Defendant further contends the rights form did not inform him of the irrebuttable presumption of intoxication if his blood alcohol exceeded .10% and, therefore, did not meet the test of State v. Singer, 457 So.2d 690 (La.App. 4th Cir. 1984), writ den., 458 So.2d 465 (La.1984).
LSA-R.S. 32:663 provides:
"Chemical analyses of the person's blood, urine, breath or other bodily substance, to be considered valid under the provisions of this Part, shall have been performed according to methods approved by the Department of Public Safety and by an individual possessing a valid permit issued by said department for this purpose. The Department of Public Safety is authorized to approve satisfactory techniques or methods, to ascertain the qualifications and competence of individuals to conduct such analyses, and to issue permits which shall be subject to termination or revocation at the discretion of the department."
LSA-R.S. 32:664provides in pertinent part:
"When a person submits to a blood test at the request of a law enforcement officer under the provisions of R.S. 32:662, only a physician, registered nurse, qualified technician or chemist may withdraw blood for the purpose of determining the alcoholic content therein. This limitation shall not apply to the taking of breath specimens."
LSA-R.S. 32:664 applies to the withdrawing of blood whereas LSA-R.S. 32:663 applies to the separate subsequent act of analysis in the laboratory. The permit requirement of Section 663 does not apply to *938 the person withdrawing the blood. State v. Junell, 308 So.2d 780 (La.1975); State v. Fortner, 478 So.2d 673 (La.App.2d Cir. 1985).
Jerry Poole, the person who withdrew defendant's blood, testified that he was a registered nurse licensed by the State of Louisiana. He was therefore qualified to withdraw the blood under the provisions of Section 664. Further, the lab report and certificate admitted into evidence complied in all respects with LSA-R.S. 15:499 et seq. and is prima facie proof of its contents.[4] The report reflects the analyst, Ms. Rutledge is the holder of a permit and qualified to perform the analysis. The report further reflects the blood was analyzed according to the rules prescribed in the Louisiana Register. The blood test results were, therefore, properly obtained and the trial court correctly denied defendant's Motion to Suppress on these grounds.
We also find no merit in defendant's contention that the blood test results should have been suppressed because defendant was not advised of the irrebuttable presumption of intoxication if his blood-alcohol exceeded .10% as required by State v. Singer, supra.
At the time defendant was arrested and the blood test conducted, LSA-R.S. 32:661(C) provided:
"When a law enforcement officer requests that a person submit to a chemical test as provided for above, he shall first inform the person of the consequences of a refusal and the consequences if the test is conducted and the results indicate a blood alcohol concentration of .10 percent or above the weight of alcohol in the blood.[5] In addition, the law enforcement officer shall have the person sign a standard form advising such person of his constitutional rights. The law enforcement officer shall have the person sign a separate form advising such person of the consequences of his refusal to submit to a chemical test. However, a single combination of the two forms may be used. If the person is unable or unwilling to sign the form, the law enforcement officer shall certify that such person was informed of his constitutional rights and was unable or unwilling to sign said form."
*939 Prior to the defendant's consent to the blood alcohol test, Officer Paine read to the defendant his rights relating to the chemical test for intoxication from a form provided by the Louisiana Department of Public Safety. The form states in pertinent part:
A. These are the CONSEQUENCES AND EFFECTS OF SUBMISSION OR REFUSAL TO SUBMIT TO THE CHEMICAL TEST.
1. Refusal to submit to this chemical test shall result in the suspension of your driver's license for a minimum period of six (6) months.
2. Refusal to submit to this chemical test may also result in the loss of your vehicle registration and license plates.
3. Evidence of your refusal to submit to this chemical test or test results of .10 percent or above will be used against you in court.
* * * * * *
C. If you submit to the test, and the test results show a blood alcohol level of .10 per cent or above, your driver's license shall be suspended for a minimum period of three (3) months.
At the time Singer was decided, LSA-R.S. 32:661(C)(2) provided:
"If the above procedure is not complied with, the results of the test or any reference to it is inadmissible into evidence in any criminal action or proceeding arising out of acts alleged to have been committed while the person was driving or in actual physical control of a motor vehicle upon the public highways of this state while under the influence of alcoholic beverages."
The defendant in Singer was not advised of the irrebuttable presumption of intoxication if his blood alcohol exceeded .10 percent and the court concluded the statute required the suppression of the test as evidence. This statutory requirement of suppression was repealed by Act 409 of 1984, effective September 3, 1984. The obvious legislative intent in deleting this provision was to eliminate the sanction of inadmissibility where the warning procedure is not followed. State v. Fortner, supra. The instant offense was committed on January 25, 1985, after the statutory rule of suppression was repealed.
In State v. Fortner, supra, we stated:
"There is no constitutional infringement involved in subjecting persons suspected of driving while intoxicated to a chemical test and no constitutional requirement that such persons be advised of the consequences of taking the test and of adverse test results. State v. Spence, 418 So.2d 583 (La.1982). The failure of a law enforcement officer to comply with the procedure required by statute offends no constitutional rights of the person to be tested. Accordingly, the drastic remedy or sanction of the judicially created exclusionary rule, designed to deter wrongful police conduct which impinges on constitutionally protected rights, need not and should not be applied to exclude chemical test evidence obtained without compliance with the statutory warning procedure. Compliance by law enforcement officers with the statutory requirements is a matter which should be required and regulated internally within the law enforcement agencies."
The defendant in Fortner was given the same written advisement of the consequences of taking the test and its results as was given the defendant in the instant case. We, therefore, find as we did in Fortner, that defendant was adequately advised of the consequences of taking the test and the trial court was correct in denying defendant's Motion to Suppress on this ground.
We further note that the recent supreme court decision of State v. McGuire, 493 So.2d 559 (La.1986), makes it clear the warning defendant Skeetoe received as to the requirement of a test results of .10 or above was sufficient.
We will address defendant's contention that there was insufficient proof he was driving the vehicle in assignment of error No. 6.
These assignments lack merit.

*940 Assignments of Error Nos. 3 & 4

By these assignments, defendant contends the trial court erred in allowing Ms. Steele to give her opinion as to whether defendant was intoxicated. Defendant argues LSA-R.S. 15:463 prohibits opinion testimony from a lay witness.[6]
The record reflects Ms. Steele testified she noticed a strong odor of alcohol emanating from defendant while she was supporting his head. The prosecution subsequently inquired if Ms. Steele had formed an opinion as to defendant's sobriety and she responded affirmatively. Defense counsel objected and the trial judge, after reviewing Ms. Steele's personal observations, overruled the objection stating, "Well, she further testified she was formerly married to an alcoholic, therefore, I will allow her to answer the question."
Witnesses are allowed to draw reasonable inferences from personal observations. State v. Prestridge, 399 So.2d 564 (La.1981). Intoxication, with its attendant behaviorial manifestations, is an observable condition about which a witness may testify. State v. Neal, 321 So.2d 497 (La.1975); State v. Spence, supra.
The testimony of Ms. Steele with respect to defendant's sobriety was not barred as opinion evidence.
These assignment lack merit.

Assignments of Error Nos. 6 & 7
Defendant, on appeal and in his writ application, argues there is insufficient evidence to prove he was operating the vehicle at the time of the accident. He further contends, with respect to the charge of failing to maintain control, there is insufficient proof of negligence within the meaning of LSA-R.S. 32:58.
In reviewing a conviction based on circumstantial evidence we must determine, viewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have concluded beyond a reasonable doubt that every reasonable hypothesis of innocence has been excluded. LSA-R.S. 15:438; State v. Sims, 426 So.2d 148 (La.1983). Not every hypothesis of innocence must be excluded; only those which are reasonable. State v. Bindom, 410 So.2d 749 (La.1982).
The state must prove the defendant operated his vehicle while intoxicated to convict him of D.W.I. State v. Lindinger, 357 So.2d 500 (La.1978); State v. Sims, supra.
In the instant case, there were no eyewitnesses or direct proof that defendant operated his vehicle while intoxicated. Ms. Steele testified she passed the accident scene shortly before 8:00 a.m. on her way to work and observed nothing unusual. Sometime between 8:30 and 9:00 a.m., Ms. Steele was summoned to the scene which was only about 150 yards from where she worked. She arrived and observed defendant in the driver's seat and slumped over the steering wheel. After unsuccessfully attempting to open the doors, she climbed through a window and lifted defendant's head to support his breathing. It was at this point that Ms. Steele detected the strong odor of alcohol emanating from defendant.
Steven May, a Caldwell Parish Sheriff's deputy, testified he arrived at the scene while Ms. Steele was administering first aid to defendant. Deputy May testified the vehicle's motor was not running, but he believed the ignition was still on. May further testified the road in the area where the accident occurred is a two lane, straight road with an incline.
Trooper Paine testified he arrived at the scene after defendant had been taken by ambulance to the hospital. Paine further testified the weather conditions were dry and sunny.
One hypothesis of innocence which can be advanced is that someone other than defendant was driving the vehicle. Deputy May testified several people were at the *941 scene when he arrived. Given the facts of this case, however, we find this hypothesis unreasonable. Ms. Steele testified defendant was the only occupant of the vehicle and he was unconscious and slumped over the steering wheel when she arrived. Further, Ms. Steele and Deputy May testified the doors to the vehicle were jammed and had to be pried open. It is unlikely that another person was driving and after the accident was able to get out of the vehicle leaving defendant in the driver's seat and slumped over the steering wheel. Another hypothesis is that defendant lost control of the vehicle and after the accident became intoxicated. We conclude this hypothesis is also unreasonable because there was no evidence of any alcoholic beverage containers being found in the vehicle. Further, when Ms. Steele found defendant he was unconscious and suffering from mild facial contusions, abrasions and lacerations. The accident occurred between 8:00 and 9:00 a.m. and it is unlikely that, after the accident and before Ms. Steele arrived, defendant would become intoxicated to the point of unconsciousness.
Viewing the evidence in the light most favorable to the prosecution, we find any rational trier of fact could have concluded beyond a reasonable doubt that every reasonable hypothesis of innocence was excluded.
We further conclude the evidence was sufficient to convict defendant of negligently failing to maintain control of his vehicle under LSA-R.S. 32:58 which provides:
"It shall be unlawful for the driver of any vehicle to negligently fail to maintain reasonable and proper control of said vehicle while operating the vehicle on the public roads of this state."
Defendant contends the term "negligently" used in LSA-R.S. 32:58 means criminal negligence and the state failed to prove such negligence at trial. Criminal negligence is defined in the criminal code at LSA-R.S. 14:12:
Criminal negligence exists when, although neither specific nor general criminal intent is present, there is such disregard of the interest of others that the offender's conduct amounts to a gross deviation below the standard of care expected to be maintained by a reasonable careful man under like circumstances.
LSA-R.S. 32:1 et seq., The Highway Regulatory Act, was enacted to provide uniform rules for the operation of all motor vehicles traveling upon the public highways of this state. LSA-R.S. 32:21. A violation of these statutes constitutes negligence. Pierre v. Allstate Ins. Co., 257 La. 471, 242 So.2d 821 (1970); Robinson v. Allstate Ins. Co., 424 So.2d 322 (La.App. 1st Cir.1982), writ den., 430 So.2d 76 (La.1983); Rome v. State Farm Mutual Auto Ins. Co., 439 So.2d 1253 (La.App. 5th Cir.1983). See also Gregorie v. Hartford Acc. & Indem. Co., 348 So.2d 186 (La. App.3d Cir.1977).
Negligence is conduct which falls below the standard established by law for the protection of others against unreasonable risk of harm. It is a departure from the conduct expected of a reasonable prudent man under like circumstances. Pence v. Ketchum, 326 So.2d 831 (La.1976); Craft v. Caldwell Parish Police Jury, 455 So.2d 1226 (La.App.2d Cir.1984).
The term "negligently" used in LSA-R.S. 32:58 is not preceded by the term "criminal" and does not define the same conduct as is defined in LSA-R.S. 14:12 by the terms "criminal negligence" which 14:12 defines as "gross deviation below the standard as can be expected to be maintained by a reasonably careful man." We conclude the term "negligently" in R.S. 32:58 means conduct which is a departure from that expected of a reasonable prudent man under like circumstances. The issue is, therefore, whether the state proved beyond a reasonable doubt defendant's conduct fell below this standard.
The state established, through circumstantial evidence, defendant was driving a vehicle while his blood-alcohol content was .36 grams percent alcohol. The state *942 further established defendant lost control of the vehicle which resulted in an accident.
This evidence, viewed in the light most favorable to the prosecution was sufficient for any rational trier of fact to conclude beyond a reasonable doubt that every reasonable hypothesis of innocence was excluded. Defendant's operation of a vehicle while intoxicated was a departure from the conduct expected of a reasonable prudent man under like circumstances and, therefore, constituted negligence under LSA-R.S. 32:58. This negligence caused the defendant to fail to maintain reasonable and proper control of the vehicle which resulted in an accident.
We further point out that if the evidence must establish criminal negligence to sustain a conviction under LSA-R.S. 32:58, that the state has met that burden of proof. The defendant was operating the vehicle while intoxicated, which conduct amounts to a gross deviation below the standard of care expected to be maintained by a reasonably careful man under like circumstances. State v. Pelt, 448 So.2d 1294 (La.1984); State v. Wheat, 471 So.2d 1027 (La.App. 1st Cir.1985).
This assignment of error lacks merit.
For the foregoing reasons, defendant's conviction and sentence on the charge of driving while intoxicated, third offense, are reversed. Defendant's convictions and sentences on the charges of failure to maintain control of his vehicle and driving under revocation are affirmed. The case is remanded with instructions to the trial court to enter a judgment of conviction of D.W.I., second offense, and to impose a sentence for that crime.
Reversed in part, affirmed in part and remanded.
SEXTON, J., dissents and assigns written reasons.
SEXTON, Judge, Dissenting.
I respectfully dissent from the majority's treatment of Assignment of Error No. 1. In my view, nothing in Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) or State v. LaFleur, 391 So.2d 445 (La.1980), requires a trial judge to assess a defendant's "literacy, competency, understanding and volition" when an apparently competent defendant evidences an intent to waive counsel and plead guilty, particularly in a misdemeanor. See my dissent in State, City of Bossier City v. Walpole, 459 So.2d 172 (La.App. 2d Cir. 1984), Sexton, J. dissenting at 175, for a detailed analysis of the jurisprudence in this area.
NOTES
[1] The record reflects the following colloquy on August 14, 1980:

"BY THE COURT: Mr. Skeetoe, do you have you an attorney?
BY MR. SKEETOE: No sir.
BY THE COURT: Are you able to employ you an attorney?
BY MR. SKEETOE: Yes sir, I am.
BY THE COURT: You understand if you are not able to employ you an attorney, the Court would appoint you an attorney.
BY MR. SKEETOE: Yes sir.
BY THE COURT: You want to waive your right to an attorney and go ahead and enter a plea of guilty today?
BY MR. SKEETOE: Yes sir.
BY THE COURT: This is your second offense of D.W.I., but you still want to go ahead and waive your right to an attorney and enter a plea of guilty?
BY MR. SKEETOE: Yes sir, I guess so.
BY THE COURT: Well, I want you to be sure you know what you are doing ...
BY MR. SKEETOE: Yeah ...
BY THE COURT: ... here because it is a ... a ... are you sure on a second offense that he can waive the right to an attorney, Mr. Wampler?
BY MR. WAMPLER: Yes sir, he can.
BY THE COURT: On a second offense?
BY MR. WAMPLER: Yes sir.
BY THE COURT: I know he can on a first.
BY MR. LUTES: Yes sir, he can. On a third
BY THE COURT: Alright, sir, alright. The sentence is you pay a fine of Five Hundred Dollars ($500.00) plus costs of Court, default ninety (90) days in jail and you serve, in addition to that, four (4) months in the parish jail."
[2] "BY THE COURT:

Q. Mr. Skeetoe, you heard your attorney say you at this time wish to enter a plea of guilty to a charge of Driving While Intoxicated second offense. Is that right?
A. Yes sir.
Q. All right, it's necessary that I ask you a number of questions to make sure that you understand what you are doing. I'm going to request that you be placed under oath for that purpose. Do you have any objection to being placed under oath?
A. No Sir.
Q. How old are you, Mr. Skeetoe?
A. Thirty-five.
Q. Where do you live?
A. I'm staying in Columbia right now. I'm from Dry Prong.
Q. You're saying from, you live in Columbia now ...
A. Yes Sir. I got me a job up there. I'm staying with Roy Rogers.
Q. What do you do for a living?
A. I was cutting logs until I cut my fingers.
Q. All right, has your attorney explained to you and do you understand by entering a plea of guilty now you are waiving or giving up your right to a trial?
A. Yes Sir.
Q. That includes a number of different things. On a charge of second offense DWI you'd ordinarily be tried by a judge without a jury. If all the matters that were originally tried together were tried at one time, you'd be entitled to a trial by a jury. You would have the right to waive or give up your right to a trial by jury if you wanted to but you could go to trial either in front of a jury or be tried by a judge. And that's what you give up by entering a plea of guilty. Do you understand that?
A. Yes Sir.
Q. Now, included in your right to a trial is your right to see, hear and question all witnesses called against you by the State. They'd have to call some in order to prove that you were, in fact, driving a motor vehicle on the highways here in LaSalle Parish on the 14th of August, 1983. They'd also have to prove that you were the same person caught driving while intoxicated on the 12th of July, 1980 and that you were convicted of that on the 14th of August, 1980. And if they could prove that you were driving a vehicle in LaSalle parish under the influence of alcohol this year and the same person who was convicted for driving while intoxicated over in Grant Parish in 1980 then you might be convicted. But you would have the right to see, hear and question any witness called against you by the State. You'd have the right to offer evidence of your own if you had any that you thought might shed favorable light on the subject. You could call witnesses of your own, you could have subpoenas issued for witnesses if you needed it, you could have any kind of appropriate pre-trial hearing and at a trial you would have the right to testify yourself if you wanted to or you could choose to remain silent and not testify at all. If you did choose to remain silent then your silence could not be held against you in any way. The State cannot call you as a witness against youself and whoever might try the case, either a judge or jury, could not presume that you were guilty simply because you didn't explain your side of the story. All these things together constitute your right to trial which you're giving up by entering a plea of guilty. Is that clear?
A. Yes Sir.
Q. A guilty plea is a confession that the charge against you is true. Is that correct?
A. Is that what, sir?
Q. Is that correct?
A. Yea.
Q. If I accept your plea the conviction that will be entered on your record has the same effect as if you were convicted after a trial. That has several consequences or side effects. One is that you could be penalized for this offense and you would be sentenced today. You should be aware the maximum penalty that could be imposed for a second offense DWI involves a minimum of thirty (30) days imprisonment or public work and a driver education program and a drug abuse program. It could involve as much as a fine of between three and five hundred dollars or up to six (6) months in jail or both. You should also be aware that another effect of the conviction is that if you get into this same difficulty again before 1985, before August of 1985, then you might be treated as a third offender. And on a third offense, you could expect to serve a minimum of six (6) months to a year in jail and up to five (5) years and get up to a thousand dollar ($1,000.00) fine. So one more of these would be much more serious. It would be a felony. Another effect is that if you get two more of these you could expect to be imprisoned at hard labor for ten (10) to thirty (30) years. Another effect that you should anticipate is loss of driving privileges, a dramatic increase in your insurance rates, if you would be able to get insurance, and you should be aware that what we're doing here today might be used against you as evidence if you get into this difficulty again, if you get another DWI. Do you understand that?
A. Yes Sir.
Q. Have you been in jail or were you on bond?
MR. DURUSAU: He's out on bond, Your Honor
A. I stayed over night.
Q. Another effect of your conviction would be that you'd have the right to appeal. You could appeal either the conviction itself or the sentence even though you are pleading guilty rather than going through a trial. You'd have the right to the assistance of an attorney to help you on appeal if you could not afford counsel, counsel could be appointed to represent you. Do you understand that?
A. Yes Sir.
THE COURT: Are you working on an appointment or retained?
MR. DURUSAU: Retained, Your Honor.
Q. You should be aware that you could not afford to have your attorney assist you through the trial that an attorney could be appointed to represent you to help you with that. Is that clear?
A. Yes Sir.
Q. If you wanted to take an appeal you'd have to give notice of your intention to appeal within five (5) days of the time that you were sentenced. Do you understand that?
A. Yes Sir.
Q. How old are you?
A. Thirty-five.
Q. How much education have you completed?
A. I went to the ninth grade in school and finished my learning GED.
Q. Do you consider yourself in a normal state of health today?
A. Yes Sir.
Q. Have you had any alcohol in the last twelve hours?
A. No Sir.
Q. Are you taking any kind of medication?
A. Yes sir. I was taking some for my hand.
Q. I can see that you've got bandages on your, two of your fingers. What kind of medication are you taking?
A. Some pain pills and an antibiotic.
Q. Do you think you understand what's going on here today? Are you having any ...
A. Yes Sir.
Q.... pills to make you sleepy or drowsy or anything like that?
A. No Sir.
Q. Do you feel that you've hand (sic) enough time to talk to your lawyer and then he's answered all questions that you have?
A. Yes Sir.
Q. Has he explained to you that you would have a right to a trial and could go to trial if you wanted to?
A. Yes Sir.
Q. All right, do you feel you understand what you're doing here?
A. Yes Sir.
Q. The law says that you've either got to put in thirty (30) days public work and go through these educational programs or spend thirty (30) days in jail. And I suppose the option is with you. We've had some people say they'd rather serve it out. I don't know whether you prefer one or the other.
A. I'd rather work.
Q. All right, it's not such a foolish question because we have had people say they'd rather serve it out. Very few but it does happen.
THE COURT: Do you believe he understands what he's doing, Mr. Durusau?
MR. DURUSAU: Yes, Your Honor.
THE COURT: All right, show that I'll accept his plea of guilty and find it to be a free, voluntary and intelligent waiver of rights."
[3] For this reason, the state was not required to show defendant was advised of his constitutional rights under Boykin when he pleaded guilty to D.W.I. in Grant Parish on August 14, 1980. State v. Shuff, 459 So.2d 78 (La.App.2d Cir. 1984).
[4] LSA-R.S. 15:499 provides:

"A. All criminalistics laboratories established by laws of this state or by laws of the United States, and all coroners, forensic pathologists, and other persons, partnerships, corporations, and other legal entities practicing in fields of knowledge and expertise in the gathering, examination, and analysis of evidence by scientific means are authorized to make proof of examination and analysis of physical evidence by the certificate of the person in charge of the facility in which such examination and analysis is made. Such certificate shall list:
(1) The date and time such evidence was delivered to such facility.
(2) The name of the person making such delivery, and the person receiving same.
(3) A brief description of the evidence.
(4) The type of examination or analysis requested.
(5) The name of the person making the examination or analysis.
(6) The date or dates of the examination or analysis.
(7) The results of the examination or analysis.
B. The certificate shall give the name and address of the facility in which the examination or analysis was made, and shall be signed by the person making the examination or analysis and by the person in charge of the facility."
LSA-R.S. 15:500 provides:
"In all criminal cases and in all cases in juvenile or family courts which are of a criminal nature, and in civil forfeiture proceedings arising from criminal activity, the courts of this state shall receive as evidence any certificate made in accordance with R.S. 15:499 subject to the conditions contained in this Section and R.S. 15:501. The certificate shall be received in evidence as prima facie proof of the facts shown thereon, and as prima facie proof of proper custody of the physical evidence listed thereon from time of delivery of said evidence to the facility until its removal therefrom."
[5] LSA-R.S. 14:98 provides in pertinent part:

A. "The crime of operating a vehicle while intoxicated is the operating of any motor vehicle, aircraft, watercraft, vessel, or other means of conveyance when:
(1) The operator is under the influence of alcoholic beverages; or
(2) The operator's blood alcohol concentration is 0.10 percent or more by weight based on grams of alcohol per one hundred cubic centimeters of blood; ..."
[6] LSA-R.S. 15:463 provides:

"Except as otherwise provided in this Code, the witness can testify only as to facts within his knowledge, and neither as to any recital of facts heard by him, nor as to any impression or opinion that he may have."