LINDSAY, Judge.
The defendant, Robert Mashaw, pled guilty to DWI-third offense, in violation of LSA-R.S. 14:98. The defendant reserved his right to appeal the trial court’s denial of his motion to quash the underlying predicate offenses. For the following reasons, we affirm the defendant’s conviction.
FACTS
At about 12:55 a.m. on January 14, 1988, the defendant was arrested for the offense of DWI after he was observed driving erratically. An intoxilyzer test showed that the defendant’s blood alcohol content was 0.246 percent, and a blood analysis confirmed a 0.25 percent blood alcohol reading.
On February 16, 1988, a bill of information was filed, charging the defendant with DWI-third offense. It listed two predicate offenses: (1) the defendant’s conviction for DWI-second offense on November 23,1983; and (2) his conviction for DWI-second offense on October 8, 1984. On March 2, 1988, the defendant filed a motion to quash these prior convictions as being constitutionally unsound.
On November 22, 1988, the defendant’s motion to quash was overruled by the trial court. The defendant then pled guilty to the charge of DWI-third offense. However, he reserved his right to appeal the trial court’s denial of the motion to quash. State v. Crosby, 338 So.2d 584 (La. 1976). The trial court accepted the defendant’s guilty plea. On January 4, 1989, the defendant was sentenced to serve one year at hard labor and to pay a fine of $1,000 and costs, in default of payment of which he would serve six months in jail. However, the trial court suspended the defendant’s prison sentence upon condition of payment of the fine and costs. The court ordered that the defendant be placed on supervised probation for three years, subject to certain special conditions. Among these conditions was that the defendant be imprisoned in the parish jail, subject to public work, for six months, and that he undergo substance abuse treatment and comply with the appropriate conditions of LSA-C.Cr.P. Art. 895.
The defendant appeals, contending that both of the previous predicate offenses were defective and thus insufficient to form the bases for enhancing the present crime to DWI-third offense.
LAW
If a defendant does not receive or knowingly and intelligently waive the assistance of counsel in a prior DWI conviction, the prior conviction may not be used to subject him to enhanced punishment as a repeat DWI offender. State v. Skeetoe, 501 So.2d 931 (La.App. 2d Cir.1987); State v. Bradley, 535 So.2d 1108 (La.App. 2d Cir.1988).
Before the trial court can accept a defendant’s waiver of counsel, the record must indicate that the court attempted to determine the defendant’s literacy, competency, understanding and volition. The court should make the defendant aware of the dangers and disadvantages of self-representation, so that the record will establish that “he knows what he is doing and his choice is made with eyes open.” Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 *171 L.Ed.2d 562 (1975); State v. Skeetoe, supra.
FIRST PREDICATE OFFENSE
The defendant argues that both predicate offenses are defective because they do not demonstrate that he knowingly and intelligently waived his right to counsel and his specific Boykin rights.
At the defendant’s guilty plea for DWI-second offense on November 23, 1983, the following colloquy took place between the trial court and the unrepresented defendant:
Q. Mr. Mashaw, you are charged with DWI, Second Offense. It is an offense for which you may be imprisoned in jail if you are are convicted and also an offense for which the penalty increases each time you are convicted. Do you understand chat?
A. Yes, sir.
Q. You have the right to be represented by an attorney. Do you have an attorney?
A. No, sir.
Q. Do you plan to hire one?
A. No, sir.
Q. Are you able to hire one?
A. Yes, sir.
Q. You understand your rights to be represented by an attorney and if you can’t afford to hire an attorney, the Court will appoint one to represent you at no cost to you. Do you understand that?
A. Yes, sir.
Q. And you tell the Court that you are able to hire an attorney.
A. Yes, sir.
Q. And do you, therefore, wish to waive the right to be represented by an attorney?
A. Yes, sir.
THE COURT: Let the record show that this defendant was advised of his right to counsel, his right to Court-appointed counsel in the event he was unable to hire an attorney, which would be at no cost to him and the defendant advised the Court that he was able to hire an attorney, but he did not desire to be represented by an attorney and he specifically waived his right to counsel and to have the Court appoint an attorney to represent him in the event he was unable to hire an attorney.
The trial court then asked the defendant how he pled. The defendant replied that he wished to plead guilty. The trial court then directed that the defendant be sworn. The following colloquy ensued:
Q. How old are you?
A. Twenty-five.
Q. What is your birthdate?
A. September 18th, 1958.
Q. Are you married, divorced or single? A. Single.
Q. Do you live alone or with someone?
A. I live with my parents.
Q. And your parents are?
A. Bobby Mashaw.
Q. Bobby Mashaw?
A. Yes, sir.
Q. Are you employed?
A. Yes, sir.
Q. What kind of work do you do?
A. I work for (name not understandable) Drilling Company.
Q. And how much formal education have you had?
A. Twelve years.
Q. Where did you last go to school?
A. Farmerville High School.
Q. Do you know and understand how to read, write and speak the English language?
A. Yes, sir.
Q. Do you read newspapers, books and magazines and watch television?
A. Yes, sir.
Q. Do you think you know and understand what you read and what you hear and see on television?
A. Most of it.
Q. Most of it?
A. Yes, sir.
Q. I guess that’s — most of us, that’s about as far as we go on some of that.
A. Yes, sir.
*172 Q. Have you ever been in the military service?
A. Yes, sir.
Q. What branch of the service were you in?
A. United States Navy.
Q. How long did you serve?
A. Pour years.
Q. What particular phase of the Navy were you in?
A. I was a bo’s’n [sic] mate third class. Served on a ship for three years.
Q. Have you ever been hospitalized or otherwise treated for mental disease or defect?
A. No, sir.
Q, Do you know what a constitutional right is?
A. Yes, sir.
Q. Could you explain it to me in your own words?
A. It’s the rights set down to you by the Constitution of the United States.
Q. All right. Rights that nobody can take away from you unless you yourself voluntarily give them up. Now, these rights affect a number of phases of our lives, but the ones we’re dealing with right here are those designed primarily to enable or to insure that a person accused of a crime gets a fair trial. Do you understand that?
A. Yes, sir.
Q. Do you know what a trial is?
A. Yes, sir.
Q. Have you ever seen a trail [sic]?
A. You mean a trial by jury? Or a trial by—
Q. Any kind of trial. Have you ever seen a trial?
A. Yes, sir.
Q. What is the purpose of a trial?
A. To find out whether you are guilty or not guilty.
The trial court thereafter informed the defendant of his Boykin rights, the nature of the offense, and the minimum and maximum penalties for the offense. At the conclusion of this colloquy, the trial court accepted the defendant’s guilty plea.
There is no particular formula which the trial court must follow in determining whether the defendant has waived his constitutional right to counsel. State v. Carpenter, 390 So.2d 1296 (La.1980); State v. Smith, 479 So.2d 1062 (La.App. 3rd Cir. 1985). The determination of whether the defendant knowingly and voluntarily waived his right to counsel is dependent upon the facts and circumstances surrounding the case, including the accused’s background, experience and conduct. Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); State v. Carpenter, supra; State v. Smith.
The defendant contends that the waiver of counsel in this predicate offense is insufficient. An examination of the record indicates that the trial court did not specifically inform the defendant of the dangers and disadvantages of proceeding without counsel. Otherwise, the colloquy between the trial court and the defendant is extensive and thorough.
Language in several cases would initially appear to indicate that the trial court’s failure to inform the defendant of the dangers and disadvantages of self-representation render this predicate offense invalid. State v. Smith, supra; State v. Skeetoe, supra; State v. Ayres, 509 So.2d 763 (La.App. 2d Cir.1987); State v. Graham, 513 So.2d 419 (La.App. 2d Cir.1987); State v. Adams, 526 So.2d 867 (La.App. 3rd Cir.1988); and State v. Bradley, supra. However, in each of these cases, the failure to inform the defendant of the dangers of self-representation was compounded by the trial court’s additional failure to adequately determine the defendant’s literacy, competency, understanding and volition. Thus, the defendant’s waiver of counsel could not be construed as knowing and intelligent under such circumstances.
In State v. Gipson, 514 So.2d 646 (La.App. 2d Cir.1987), writ denied in part, granted in part, 521 So.2d 1143 (La.1988), the trial court accepted the defendant’s guilty plea to a charge of issuing worthless checks and three counts of jumping bail. On appeal, the defendant argued that she had not validly waived her right to counsel. *173 The record in that case demonstrated that the defendant was repeatedly asked by the trial court if she desired counsel. Additionally, the trial court inquired into her educational background and her ability to read and write. There we held that it was “the better practice to advise the defendant, in detail, of the dangers and disadvantages of self-representation.” Thus, we faced the question of whether, in the absence of that specific advice, the record provided a basis for concluding that the defendant was aware of dangers and disadvantages of self-representation. Due to the defendant’s previous experience with the legal system (a previous felony conviction and another felony charge which was reduced to a misdemeanor), we found that the record contained “a sound basis” for such a conclusion, and affirmed her conviction.
In State v. Bradley, supra, this court reversed a conviction for DWI second offense. There the trial court in the predicate offense failed to inform the defendant of the consequences of self-representation. However, as previously noted, the trial court made no inquiry into the defendant’s literacy or competency.
Under the full totality of the circumstances of this case, we do not find the first predicate offense to be defective. While the trial court admittedly did not follow the better practice of fully apprising the defendant of the dangers of self-representation, it did fully assess the defendant’s literacy, competency, understanding and volition. The record reveals the defendant was reasonably well educated and intelligent, and that he comprehended the proceedings. When asked by the trial court, he was able to knowledgeably define a constitutional right and explain the purpose of a trial. We find that the defendant intelligently waived his right to counsel “with eyes open.” [Also, see excellent concurrence in State v. Carson, 527 So.2d 1018 (La.App. 1st Cir.1988), which discusses waiver of counsel for a guilty plea in a misdemeanor DWI case, as well as the dissenting opinion in Skeetoe, supra.]
Therefore, we find no merit to the defendant’s assignment of error concerning this predicate offense.
SECOND PREDICATE OFFENSE
The defendant’s second predicate offense arises from his arrest for DWI-third offense on March 10, 1984. This charge was amended to DWI-second offense, and the defendant pled guilty to the amended charge on October 8, 1984.[1] He was sentenced on November 7, 1984.
The transcript of the defendant’s guilty plea demonstrates that the defendant was represented by counsel. It further shows that the trial court thoroughly questioned the defendant about his background to ascertain his level of literacy, competency, understanding and volition. The trial court informed the defendant of his constitutional rights under Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), as well as his right to counsel. The defendant was fully apprised of the nature of the offense and the possible penalties. The trial court accepted the defendant’s guilty plea, finding that it was made voluntarily, knowingly, and intelligently.
Careful scrutiny of the transcript of this guilty plea reveals no constitutional infirmities. Therefore, defendant’s assignment of error pertaining to this offense is meritless.
CONCLUSION
Based on the foregoing, the conviction and sentence of the defendant are affirmed.
AFFIRMED.

. There is a minor date discrepancy in the record pertaining to this guilty plea. The transcript recites the date as September 8, 1984, while the certified court minutes show it to have been set for and to have occurred on October 8, 1984. However, the court docket number clearly demonstrates that it is the offense for which the defendant was sentenced on November 7, 1984.