J^LeBLANC, J.
This appeal was taken by the Department of Public Safety (“DPS”) from a trial court judgment reversing the suspension of a driver’s license following an arrest for driving while intoxicated.

FACTS AND PROCEDURAL HISTORY

On February 14, 1998, at approximately 1:23 a.m., plaintiff, Larry Jones, was involved in an accident after the vehicle he was driving crossed the center line of La. *775 Highway 327 and collided with another vehicle. Following the accident, Mr. Jones was arrested for driving while intoxicated. Although he initially declined to submit to either a field sobriety test or a chemical breath test for intoxication, plaintiff submitted to the breath test after he was transported to State Police Troop “A”; the test revealed that plaintiff had a blood alcohol level of 0.155 percent.
An administrative hearing was conducted on April 29, 1998, subsequent to notification to plaintiff by DPS of the withdrawal of his driving privileges. The administrative law judge concluded that the suspension of plaintiffs driving privileges by DPS was proper.
Thereafter, plaintiff filed suit in the district court seeking to have the suspension overturned. A judgment was signed by the trial court on August 7, 1998, in plaintiffs favor, reversing the administrative decision and ordering the reinstatement of plaintiffs driver’s license. DPS appeals this judgment.

ASSIGNMENT OF ERRORS

On appeal, DPS asserts the following assignment of errors:
1. The Trial Court erred by granting a “directed verdict”, in favor of plaintiff.
2. The Trial Court erred by finding that the arresting trooper’s failure to list other officers on the rights form was fatal to the driver’s license suspension under R.S. 32:667B(1).
|h3. The Trial Court erred by ordering the reinstatement of plaintiffs driver’s license.
4. The Trial Court erred by treating the judicial review of the Division of Administrative Law decision as a review other than a trial de novo, as the trial court made no independent finding.
Because we find merit in appellant’s second assignment of error and reverse herein on that basis, we find it unnecessary to address the remaining assignments of error.

ADHERENCE TO REQUISITES OF L.S.A. R.S. 32:661 C(l)

Mr. Jones maintained in the trial court that the rights form that he was provided with prior to his submission to the blood test which formed the basis of his driver’s license suspension was defective in that it did not list all of the law enforcement officers involved in the “stop, detention, investigation, or arrest of [his] person” in accordance with La. R.S. 32:661 C(l)(e). DPS asserts on appeal that no violation of La. R.S. 32:661 C(l) occurred, and alternatively, even if the requisite rights form was incomplete, it was harmless error. La. R.S. 32:661 C(l) provides as follows:
When a law enforcement officer requests that a person submit to a chemical test as provided for above, he shall first read to the person a standardized form approved by the Department of Public Safety and Corrections. The department is authorized to use such language in the form as it, in its sole discretion, deems proper, provided that the form does inform the person of the following:
(a) His constitutional rights under Miranda v. Arizona.
(b) That his driving privileges can be suspended for refusing to submit to the chemical test.
(c) That his driving privileges can be suspended if he submits to the chemical test and such test results show a blood alcohol level of 0.10 percent or above or, if he is under the age of twenty-one years, a blood alcohol level of 0.02 percent or above.
(d) That his driving privileges can be suspended if he submits to the chemical test and the test results show a positive reading indicating the presence of any controlled Rdangerous substance listed in R.S. 40:964.
(e) The name and employing agency of all law enforcement officers involved in the stop, detention, investigation, or arrest of the person.
*776 At the time of the accident in question, a deputy from the East Baton Rouge Parish Sheriffs office was the first law enforcement officer on the scene. Thereafter, Louisiana State Police Trooper Royce Clifton Hembre arrived and conducted the investigation of both the accident and alleged intoxication of Mr. Jones. Additionally, during his investigation, Trooper Hembre formulated the suspicion that Larry Jones was also a law enforcement officer and for this reason, Trooper Hem-bre stated that he called his supervisor, Sergeant Terry Mayeux, to the scene. The names of the deputy sheriff and Sergeant Mayeux were not listed on the rights form.
In the district court hearing, Trooper Hembre testified that the other officers were not actually involved in the stop, detention, investigation or arrest of Mr. Jones.[1] It is evident from the comments of the trial judge during the proceeding below, that he concluded otherwise:
You’re telling me that — you mean to tell me the deputy in East Baton Rouge Parish was, he was just there to look at the situation? If Mr. Jones would have wanted to leave the scene at that time he would have let him go?
}£ :jí í¡í sjí iji jJ:
... I agree that he’s the only guy that arrested him. I can’t agree he’s the only guy that did any type of investigation or detention. I don’t know what that other guy was out there for then, or those other two fellows.
$ ‡ ‡ ‡ ‡ ‡
Well, I think that’s the reason for the rule, to put the people’s names down on there.
In reversing the suspension of plaintiffs license for failure to list [¡^Sergeant May-eux and the deputy sheriff on the rights form, the trial court apparently concluded that a failure to comply with this requirement of La. 32:661 is a defect fatal to the validity of the blood test results. While we are unable to say the trial court erred in finding Sergeant Mayeux and the deputy sheriff to have participated in the stop, detention, investigation or arrest of Mr. Jones, we believe the trial court erred in his conclusion regarding the consequences of this omission.
In resolving this issue, we looked to the legislative history of La. R.S. 32:661. Pri- or to the 1984 amendment to the statute, paragraph C(2) read:
If the above procedure is not complied with, the results of the test or any reference to it is inadmissible into evidence in any criminal action or proceeding arising out of acts alleged to have been committed while the person was driving or in actual physical control of a motor vehicle upon the public highways of this state while under the influence of alcoholic beverages.
Noting the deletion of this paragraph from the statute, the court in State v. Fortner, 478 So.2d 673, 677 (La.App. 2 Cir.1985), stated, “The obvious legislative intent in deleting that provision was to do away with the sanction of inadmissibility where the warning procedure is not followed. Exclusion of the test results under those circumstances is no longer required by statute.” The court reasoned as follows:
There is no constitutional infringement involved in subjecting persons suspected of driving while intoxicated to a chemical test and no constitutional requirement that such persons be advised of the consequences of taking the test and of adverse test results. The failure of a law enforcement officer to comply with the procedure required by statute offends no constitutional rights of the person to be tested. Accordingly, the drastic remedy or sanction of the judicially created exclusionary rule, de *777 signed to deter wrongful police conduct which impinges on constitutionally protected rights, need not and should not be applied to exclude chemical test evidence obtained without compliance with the statutory warning procedure. Compliance by law enforcement officers with the statutory requirements is a matter which should be required and regulated internally within the law enforcement agencies.
IfiThe court has excluded chemical test evidence where the testing requirements of the statute and the Department of Public Safety regulations have not been strictly complied with. These requirements, however, go to the reliability and accuracy of the evidence and no question of reliability or accuracy is involved in failure to follow the warning procedure. [Citation omitted.]
State v. Fortner, 478 So.2d at 677-78.
In State v. Fortner, the rights form was found to have been deficient in failing to sufficiently advise the suspect of the consequences of a chemical test result of 0.10 percent or higher; however, the court held that failure to follow the procedure set forth in La. R.S. 32:661 will not result in the exclusion of the chemical test evidence in a prosecution for driving while intoxicated. State v. Fortner, 478 So.2d at 678.
While La. R.S. 32:661 C(l)(e) was not enacted until after this decision, we find the rationale applicable herein. See 1997 La. Acts 1297, § 1. Therefore, we find the trial court improperly reversed the suspension of Mr. Jones’s driver’s license merely because the rights form that he was provided prior to his submission to the blood alcohol test failed to list all of the law enforcement officers on the scene the night of his arrest. Moreover, the record does not indicate that appellee was prejudiced in any manner by this omission. See Westerman v. Louisiana Department of Public Safety and Corrections, 572 So.2d 351, 352 (La.App. 1 Cir.1990).
For the reasons stated herein, we vacate the judgment of the trial court and reinstate the decision of the administrative law judge upholding the suspension of the driving privileges of Larry Jones, each party to bear his own costs of this appeal.
JUDGMENT VACATED; ADMINISTRATIVE LAW JUDGE DECISION REINSTATED.

. Trooper Hembre pointed out that there was no “stop” since the accident occurred prior to the arrival of any law enforcement officer.